## THE MARYLAND JOCKEY CLUB et al. *vs.* STATE OF MARYLAND et al.

When the legislative charter of an association provides that the persons contributing money for the purchase of land for it, shall, upon its dissolution, be entitled to share *pro rata* in the distribution of the proceeds of the sale of the property, these contributors thereby acquire vested rights, and a subsequent statute which provides that, upon dissolution of the association, the proceeds of the sale of its land shall be applied first, to the payment of its debts, impairs these rights and is unconstitutional.

The State and individuals contributed money for the purchase of land by an agricultural association under a statute providing that upon a dissolution of the company, the State and the contributors should be entitled to the proceeds of the sale of the property. Subsequently, an Act was passed declaring that in the event of a dissolution, the creditors of the association should first be paid. *Held*, that, although the State could waive its own right of priority, it could not impair the vested rights of the other contributors, and since this statute is inoperative as to the individual contributors, it will also be held inoperative to waive the priority of the State, the intention of the Legislature being that the Act should take effect as an entirety.

The Act of 1867, ch. 128, incorporated an agricultural association and appropriated $25,000 for the purchase of land for it, and provided that upon the dissolution of the association, the land should be conveyed to the State. By the Act of 1870, ch. 89, it was provided that the city of Baltimore and the individuals who have contributed or may thereafter contribute to the purchase of land or improvements for the association shall, upon its dissolution, be entitled to share *pro rata* with the State in the distribution of the proceeds of the sale of the property. The Act of 1886, ch. 128, appropriated $3,000 for the association, "provided that in case of a dissolution of the association, the State shall be preferred to the amount of this appropriation." The Act of 1890, ch. 73, directed that in case of a dissolution, the property should be sold by the trustees under the act of incorporation, that the proceeds of sale applied first to the payment of all debts due by the association, and the balance to be paid to the State, the city of Baltimore and the individual contributors to the association *pro rata*. In 1890 the association executed a demand note to the Maryland Jockey Club in payment for improvements made upon the land. The Act of 1904, ch. 141, authorized a sale of the property upon the application of any contributor, and a division of the proceeds among the parties interested in the manner prescribed by previous acts. Upon exceptions to an auditor's account distributing the proceeds of sale, *held*,

That the demand note was given for money used in making improvements upon the land of the association, but that it cannot be allowed as a preferred debt under Act 1890, ch. 73, since the contributors who had advanced money under the Act 1870, ch. 89, thereby acquired vested rights to share with other contributors in the distribution of the proceeds of sale, and these rights cannot be impaired by the Act of 1890, which attempts to subordinate them to the claims of subsequent creditors.

That the Maryland Jocken Club is entitled to participate with the individual contributors since the note held by it represents money used in making improvements.

That the State is not entitled to be a preferred creditor to the extent of $3,000 under the Act of 1886, since that Act impairs the rights of contributors to the purchase of the property of the association; and that the money given to the association by the Act 1872, ch. 282, was intended as a gift, and as to that sum the State is not entitled to share in the distribution.

That a claim for services rendered to the association by an officer is not proven and should be disallowed.

That the net proceeds of sale should be distributed *pro rata* between the State, the city of Baltimore and the individual contributors, including the Jockey Club.

*Decided June 24th, 1907.*

Appeals from the Circuit Court for Baltimore County (BURKE, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER and ROGERS, JJ.

*Edgar H. Gans* and *W. Calvin Chesnut*, for the Maryland Jockey Club.

*Albert C. Ritchie*, for the Mayor and City Council of Baltimore.

*D. K. Este Fisher, Thomas Mackenzie* and *J. Hanson Thomas*, for claimants.

*William S. Bryan, Jr., Attorney-General*, for the State.

BRISCOE, J., delivered the opinion of the Court.

The questions in this case arise upon exceptions to an audit distributing the proceeds of sale of the land and improvements of the Maryland Mechanical and Agricultural Association, under the Act of 1904, ch. 141, providing for a dissolution of the Association, the sale of its property, and a division of the proceeds of sale.

There are seven appeals contained in the record, but as they practically present the same questions, they will be considered together.

The property consisted of land and improvements, situate in Baltimore County, on Park Heights avenue, containing about seventy-seven acres and known as the Pimlico Race Track. It was sold under a decree of the Circuit Court of Baltimore County, by Charles H. Nicolai, trustee, to the Maryland Jockey Club, for the sum of seventy thousand dollars.

The Association was incorporated by the Act of 1867, ch. 128, for the encouragement of science and practice of agricultural and of the mechanics arts, as connected therewith by the holding of exhibitions, and generally to promote the interests of agriculture and of the arts and sciences.

By this Act, the sum of twenty-five thousand dollars was appropriated to be expended to purchase ground suitable for the purpose of holding exhibitions thereon, and it was provided that should the association at any time dissolve, the trustees or their successors shall convey the land so purchased, together with all improvements thereon made, free of all encumbrance, to the State of Maryland, and also if the association shall hold no exhibitions on the land for three successive years, then the land shall be conveyed to the State.

By the Act of 1870, ch. 89, it was subsequently provided, that the corporation of the city of Baltimore and their successors and those citizens of the State of Maryland or of the United States, who have contributed or may hereafter contribute to the purchase of land or to improvements to and upon land for the use of the Maryland Agricultural and Me-

chanical Association shall in case of a dissolution of the association be entitled to and receive from the net proceeds of the sale of all land and improvements or other property now acquired or hereafter to be acquired by the association, such sum as the amount of money paid by the corporation or individual citizen may bear to the aggregate amount contributed by the State of Maryland, the city of Baltimore and the individual citizens respectively.

By the Act of 1886, ch. 128, the State appropriated the further sum of three thousand dollars and provided that in case of dissolution of the association, the State shall be preferred to the amount of this appropriation.

And by sec. 73, of the Acts of 1890, it was provided that in case of the sale of the property, the net proceeds of the sale shall be applied, first, to the payment of all debts due by the association for the land and improvements thereon, and all other debts due by the association, and after the payment of the debts in full, the balance of proceeds of sale shall be divided and paid to the State of Maryland, the city of Baltimore, and to the citizens of Maryland and of the United States who have heretofore contributed or may hereafter contribute to the purchase of land for the association or improving the same or for other uses of the association, in the proportions to the amounts which they have severally contributed.

· The next Act of Assembly is ch. 141, of the Acts of 1904, and is the Act under which the sale was had in this case. It provides for a dissolution of the association, a sale of the property and a division of the proceeds, among the parties entitled and in the proportions heretofore described by the Acts of Assembly, saving to the State its preferred claim of three thousand dollars, as provided by the Act of 1886.

The bill of complaint in this case, was filed shortly after the passage of the last named Act, for a sale of the property, and as the distribution of the fund, here in controversy will depend upon the legal effect of this Act, and the previous legislation relating thereto, we have deemed it proper for a clear understanding of the case, to cite them somewhat in *extenso*.

It appears from the record, that the principal claim in controversy is the claim of the Maryland Jockey Club, as assignee of a note, originally given by the association to ex-Governor Frank Brown, dated December 19th, 1890, and payable to Frank Brown for the sum of twenty-three thousand one hundred and eight dollars and eighty-one cents.

The amount of the claims of the State of Maryland, except the appropriation (Act 1872) of Baltimore City, and the various individual contributors, as evidenced by certificates issued by the association under the Act of 1870, are practically undisputed except as to their priority of payment.

In the auditor's account filed on the 2nd of March, 1906, the claim of the Maryland Jockey Club was allowed in full, as a preferred claim under the Act of 1890, ch. 73.

The State was allowed a preferred claim of $3,000 under the Act of 1886, ch. 158. The claim of George W. Alt, for services as secretary and treasurer of the association, was allowed in full, and the residue of the fund was distributed *pro rata*, between the State, Baltimore City and the individual contributors.

On the 14th day of December, 1906, the various exceptions set out in the record, to the auditor's account, were sustained by the Circuit Court of Baltimore County, and the account was set aside. The papers were referred to the auditor with directions to state a new account, distributing the net proceeds of sale under the rule of equality fixed by the Act of 1870, that is, between the State of Maryland, Baltimore City, and the individual contributors *pro rata*. The claim of George W. Alt, was rejected altogether, as not having been proved.

And from this order, these appeals have been taken.

We come, then, to a consideration of the claims, as presented on the record, and to the various exceptions filed to them. We shall dispose of them separately and as briefly, as the law and facts will permit.

(1.) The claim of the Maryland Jockey Club, as assignee of the note, originally given by the association, to ex-Governor Brown, was allowed by the auditor in full, as a preferred claim

under the Acts of 1890, chapter 73 and 1904, chapter 141, but was disallowed as a preferred lien by the Court below. This brings us to the consideration of the principal controversy in the case. This claim is made up of sums contributed by Governor Brown to the association, for the erection of buildings, and for the purpose of making improvements to and upon land for the use of the association. The indebtedness was approved and audited by the executive committee of the association, on the 19th day of December, 1890, and the note was given, covering the amount of this indebtedness. The action of the committee was subsequently ratified and approved by the association. We have examined the testimony with respect to this claim with the utmost care and consideration; and we are satisfied, in view of the proof and surrounding circumstances, that the money contributed by Governor Brown and secured by the note went into the improvements upon the land of the association, and the claim is a proper one to participate in the distribution of the fund, under the Act of 1870, chapter 89. But while we are of the opinion that the objections to the note are not supported by the evidence we all agree that it cannot be allowed as a preferred claim or to be paid in full out of the fund in the hands of the trustee.

By the Act of 1870, chapter 89, each of the contributors to the association acquired rights with the State, and were given a lien on the proceeds of sale. The language of the Act is, that the corporation of the city of Baltimore and those citizens of the State of Maryland or of the United States, their heirs and assigns, who have contributed or may hereafter contribute to the purchase of land, or to improvements to and upon land for the use of the association, shall in case of a dissolution, be entitled to and receive from the net proceeds of the sale of all lands and improvements, or other property now acquired, or hereafter to be acquired by said association, such sum as the amount of money paid by said corporation, or individual citizen may bear to the aggregate amount contributed by the State of Maryland, the city of Baltimore and the individual citizens respectively.

The manifest object and purpose of the Acts of 1890 and 1904, relied upon to sustain the priority of the claim here asserted, was to divest and postpone the vested rights and interests of all the contributors under the Act of 1870, and to give priority to the "payment of all debts due by the association for the land and improvements thereon and all other debts due by the association."

The effect of such legislation would be, not only to impair vested rights, but to take the property of the contributors under the Act of 1870, and give it to others, in clear violation of the 23rd Article of our Bill of Rights and of Art. 1, sec. 10, of the Constitution of the United States. Such legislation cannot be sustained and must be declared as invalid and void in so far as it attempts to postpone the rights and lien of the contributors, under the Act of 1870.

The State could clearly waive its own lien by proper legislation, in favor of other creditors, but it was attempted by the Act of 1890, to postpone the rights secured by all the certificate holders, and failing in this, as it manifestly must, the Act of Assembly must be held to be inoperative, as to all of them, whether they be held by the State, the city of Baltimore or the individual contributors.

The intention of the Legislature being the Act should take effect as an entirety. *Campau* v. *Detroit*, 14 Mich. 276; *State* v. *Benzinger*, 83 Md. 481.

· (2.) The claim of the State of Maryland to the extent of the three thousand dollars, as provided by the Acts of 1886 and 1904, was properly disallowed by the Court below as a preferred claim. These Acts were attempts to impair vested rights, and in so far as they sought to displace or postpone the rights of the other contributors in the fund, and to give the State a preference, must be held to be invalid.

(3.) There was no error in the rejection of the claim of George W. Alt, for services rendered the association; the claim does not appear to have been established by proof, and even if it had been, we fail to see upon what ground, it could have been allowed as a preferred claim.

· (4.) As to the State's claim under ch. 282 of the Acts of 1872, we need only say, that this appropriation was clearly intended as a donation by the State to the Association for the promotion of the agricultural interests of the State.    There is nothing in the title or body of the Act, to indicate that the State intended to reserve a lien or that it was intended as a contribution to be secured by the provisions of the Act of 1870.    It must, therefore, be disallowed and excluded from the State's claim under the Act of 1870.    But the State's claim, under the Act of 1886, ch. 128, rests upon an entirely different ground, and must be allowed to participate proportionately under the rule heretofore established.

We have thus disposed of all the claims presented by the record, and have stated our reasons as to which should be allowed and those which should be rejected.

We agree with the conclusion reached by the Circuit Court of Baltimore County, as to the rule of equality to be applied in the distribution of the fund now in Court, except as to the allowance of that part of the State's claim, appropriated under ch. 282, of the Acts of 1872.    That is, the net proceeds of sale, after the allowance of proper expenses, should be distributed among the claims of the State of Maryland, except the appropriations under the Act of 1872, the Mayor and City Council of Baltimore, the individual contributors, including the claim of the Maryland Jockey Club, upon the rule of apportionment declared by the first section of the Act of 1870.

It follows from the views expressed that the order appealed from will be affirmed in part and reversed in part, and the cause remanded to the end that a new audit may be stated, distributing the proceeds of sale in conformity to this opinion. The costs in this Court and in the Court below, to be paid out of the fund.