CHARLES E. McLANE *v.* STATE TAX COMMISSION
ET AL.
[No. 27, October Term, 1928.]

134

*Decided November 22nd, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Clarence K. Bowie* and *Edward H. Burke,* for the appellant.

*Herbert Levy, Assistant Attorney General,* and *Simon E. Sobeloff, Deputy City Solicitor,* with whom were *Thomas H. Robinson, Attorney General,* and *A. Walter Kraus, City Solicitor,* for the State Tax Commission, the Appeal Tax Court, and the Mayor and City Council of Baltimore, as appellees.

PARKE, J., delivered the opinion of the Court.

Charles E. McLane, a resident of Baltimore County, and Henry C. Riggs, a resident of Anne Arundel County, are partners and carry on their business of brokers and dealers in stocks and securities under the firm name of Riggs & McLane in their place of business in Baltimore City. The firm was assessed for its office furniture by Baltimore City,

when the municipal corporation attempted to assess it in the further sum of one hundred thousand dollars for its "merchandise securities located at 32 South Street," which is the location of their business in Baltimore City. The assessment was resisted, and the matter was carried by the firm to the Appeal Tax Court of Baltimore City and thence to the State Tax Commission. The State Tax Commission found the facts as here recited and that the partnership was the owner during the period in question of bonds, certificates of indebtedness, and shares of stock in foreign corporations, which, under section 225 of article 81 of the Code, are made taxable to the owner for state and local purposes at the place where the owner resides if in Maryland, and that such securities amounted in value to not less than $100,000, and were kept by the owner either at its office, 32 South Street, Baltimore, or elsewhere in said city; and decided that the co-partners, trading as Riggs & McLane, be assessed in Baltimore City in the sum of $100,000 for the securities owned by them.

Charles E. McLane, who for many years has been a resident of Baltimore County, instituted in the Circuit Court for Baltimore County the pending proceedings for the purpose of having the order of the State Tax Commission reversed. The State Tax Commission produced and filed in the cause the transcript of the record of the proceedings before it as prayed by the petitioner and provided by section 259 of article 81 of the Code. The judges of the Appeal Tax Court of Baltimore City, the Mayor and City Council of Baltimore, and the State Tax Commission of Maryland, which were made the defendants, appeared specially in the cause for the purpose, and moved that the proceedings be dismissed for want of jurisdiction in the Circuit Court for Baltimore County.

An appeal from the decision of the State Tax Commission is restricted to questions of law, and is confined "to the court in that county where the property is situated, if real estate or tangible personal property, or where the owner resides, if intangible personal property." Code, art. 81, secs. 253, 259.

The partnership property in the instant case was stocks, bonds, and other securities, and, in order that the Circuit Court for Baltimore County have jurisdiction on its appeal, it was necessary that the owner of this intangible personalty be a *bona fide* resident of Baltimore County. The trial court was of the opinion that the owner of the intangible personalty of the partnership was not a resident of Baltimore County, but of Baltimore City, and so dismissed the petition.

If the partners had been trading in tangible personal property, the firm would unquestionably have been assessed in Baltimore City on the theory that the stock carried in trade was goods and chattels there permanently located. *Hopkins v. Baker,* 78 Md. 363; *Myers & Houseman v. Baltimore County,* 83 Md. 387. These decisions, however, leave open the question whether the situs for taxation of the *intangible* personal property of a firm whose members are residents of the state, but not of the county or city where the firm business is located, is the respective residences of the members of the partnership, or the city or county within which the business is carried on. In the solution of that question, which is the one presented by this record, reference must be first had to the statutory law, since the Legislature has the power, within the limitations prescribed by the Constitution, to treat the partnership as a distinct legal entity for the purpose of the assessment and the imposition of taxes. The inquiry, therefore, will be whether the Legislature has, for the purpose of taxation, recognized a partnership to be a legal entity; owning the property and, so far as its intangible personalty is concerned, subject to taxation in the city or county where the firm is resident; and, if so, whether the Legislature was within its constitutional rights.

1. The case of *Hopkins v. Baker,* 78 Md. 349, was decided in 1894, and there the court, reserving the question now at bar, said:

"We do not deem it necessary to determine whether this stock could be taxed in Baltimore City by reason of the fact that it is owned by a firm transacting its business there. We are of the opinion, however, that it is perfectly proper to

assess the property to the firm, instead of to the individual members thereof according to their respective interests.

There are many reasons why this should be so. The interest of the partners may vary from time to time, and should it be necessary at any time to sell the property for taxes, it might be very inconvenient and cause serious delay in the collection of taxes, if the interests of partners must be determined as they would likely have to be before any one would purchase.

As partnership assets are liable for partnership debts before they are for the debts of the individual members of the firm, it would be proper to levy the taxes against the firm. Assessing the firm instead of the individual members will save much inconvenience to the authorities, and do no injustice to any one."

The quotation is taken at length from the opinion, because, although speaking with reference to tangible personal property constituting the stock in trade of the partnership, the reasoning of the court is equally, if not more, applicable to its intangible personal assets, and because the decision is a clear adoption of the conception of a partnership as a distinct legal entity for the ends of taxation. *Myers & Houseman v. Baltimore County* (1896), 83 Md. 385. The conclusion of our predecessors was supported by authority and practice. The general rule is thus stated by Judge Cooley: "Partnership property is taxable as an entity at the domicile of the firm rather than at the residences of the several owners; and the domicile of a partnership, for the purposes of taxation, is its place of business." *Cooley on Taxation* (4th Ed.), secs. 596, 473, 1105; 1 *Desty on Taxation,* sec. 62.

The next general assessment statute following the decision in *Hopkins v. Baker, supra,* was chapter 120 of the Acts of 1896, and, in that law, a partnership was, for the first time, so far as the court is advised, classified as a separate entity for the purpose of taxation. By section 173 of that statute it was provided that the assessors in Baltimore City and the counties should send to every *person* in their respective assessment districts, who should own any real or per-

138

sonal property subject to taxation, forms or schedules and interrogatories for real and personal property; and that such persons should make a full and complete return of their property under oath. The term "person" was used collectively and its scope was defined by the statutory declaration that "every partnership concern, corporation, trustee, administrator, guardian, committee of a lunatic and every agent of any person not residing or being at that time in the said county or city, and every person having any manner of title, either legal or equitable (if the legal title to said property be in a nonresident) to, or having possession of, holding or claiming in any manner, anything required to be returned in said schedule, shall be within the provisions of this section and comply with the same. * * * Every schedule of partnership property shall be sworn to by at least one of the members of the partnership." Sections 173, 174. Again, the same statute provides that "if any taxable person or members of any copartnership, unincorporated association or company, officer or stockholder, or member of any limited partnership, joint stock association or corporation shall agree or enter into any agreement or undertaking, that upon the failure of such taxable person, copartnership, unincorporated association, company, limited partnership, joint stock association or corporation to make the return required by section 173 of this Act, to be made, such assessor shall return a less amount of property made taxable by this Act, than should have been returned by such taxable person, copartnership, unincorporated association, company, limited partnership, joint stock association or corporation, the person entering into such agreement, arrangement or understanding shall be guilty of conspiracy." Section 177. Similar provisions are found in chapter 300, p. 251, of the Acts of 1910, which was the succeeding assessment law, but which was applicable only to the counties of the state, except Somerset and Worcester.

The Legislature made no further provision for a general assessment until it created the State Tax Commission of Maryland by the Acts of 1914, ch. 234. This body is given general supervision over the administration of the assess-

ment and tax laws of the state, and has the power and authority to enforce and execute a continuing method of assessment and to require that all property in the state be reviewed for assessment at least once in every five years. Among the powers and duties of the State Tax Commission are: "To have general supervision over all supervisors of assessments and to have the final determination of assessments of all property in all the counties, cities, town and villages of the state to the end that all taxable property shall be placed upon the assessment books and equalized between persons, firms and corporations in all the counties, districts, towns and villages of the state, so that all persons, firms and corporations shall be assessed alike for like kinds of property;" and "to require individuals, firms and corporations to furnish complete information as to the ownership of all property taxable or exempt, and as to all facts relative to the value thereof." Acts of 1914, ch. 841, sec. 234, now Code, art. 81, sec. 249, sub-secs. (1), (6), (2), (7).

The passages quoted, with their context, make clear that, so far as taxation is concerned, the legislature has made the partnership or firm a legal entity, within the tax district in which its place of business is resident or domiciled. This is conclusively shown by the association in the statutes of a firm or partnership with the individual and corporation as co-ordinate taxable entities; and from the fact that within the tax district every one of these taxable entities is similarly bound to make a return, to suffer an assessment and to pay the tax levied.

By ascribing to the firm or partnership the ownership of the property for the purpose of taxation where the firm was resident, the legislature brought about greater uniformity and equality in the imposition of taxes, and secured the payment of local taxes to the political division of the state that afforded protection to the business at the place where it was conducted. The case on the record is an admirable illustration. The business was carried on with fire and police protection, and with the benefit of lighting, highways, sewerage and water service, which were all supplied by the tax-

payers of Baltimore City, and which the firm enjoyed in common with other similar firms whose partners were residents of that municipality. It would seem both just and logical in the legislature to require a firm so located and doing business to contribute to the government of the political division in which it resided by paying taxes upon its intangible assets there employed, rather than to permit its non-resident members to pay to another political division taxes on such intangible partnership personalty, according to their respective interests, at the variant rates of taxation prevailing in the respective counties in which they severally reside. Furthermore, the assessment and levy of a tax at the place where the business is conducted is more certain, convenient and economical.

2. While the argument of convenience, equality, and uniformity is an aid in the ascertainment of the legislative intent and justifies the interpretation here made upon economic and political grounds, nevertheless the enactment to be effective must be constitutional. The general rule of law is that the legislature has absolute power of taxation over all the property within the state, except as restricted by the federal and state constitutions; and section 51 of article 3 of the Maryland Constitution is relied upon to make void the legislation that, for the purposes of taxation, a partnership is a legal entity and the owner of the partnership property, and is to be assessed therefor at the place of business of the firm.

Section 51 declares: "The personal property of residents of this state shall be subject to taxation in the county or city where the resident *bona fide* resides for the greater part of the year for which the tax may or shall be levied, and not elsewhere, except goods and chattels permanently located, which shall be taxed in the city or county where they are so located, but the General Assembly may by law provide for the taxation of mortgages upon property in this state and the debts secured thereby in the county or city where such property is situated."

The last clause, relating to the taxation of mortgages, was added to the section by the adoption of the amendment pro-

posed by the Acts of 1890, ch. 426. The original section was first incorporated in the Constitution of this State by the Constitutional Convention of 1867 for the purpose of preventing individuals, whose places of business were in Baltimore City or in one of the counties, and who so resided for the greater part of the year, from escaping taxation by that city or county on their personalty, through establishment of a residence for taxation in the city or county where they resided for but a short period of the year. *Perlman's Debates of Maryland Constitutional Convention of* 1867, pp. 287-290; *Proceedings of Convention of* 1867, pp. 112, 380. So, it has been held that the section does not apply to a corporation, *Balto. C. & A. Ry. Co. v. Wicomico County,* 93 Md. 113, 132; nor to personal property belonging to nonresidents. *Allen v. National State Bank,* 92 Md. 509, 513; *Baldwin v. Washington County,* 85 Md. 145; but it does embrace all a resident's personalty, which is divided into (1) goods and chattels permanently located, (2) mortgages upon property in this state and the debts secured thereby, and (3) all other personal property. Therefore, for the purposes of taxation, the *situs* of the personal property within the third classification is fixed by the Constitution as being the residence of the owner. The Legislature has no power to change this constitutional rule. *Baltimore v. Allegany County,* 99 Md. 1. There is nothing, however, in this constitutional mandate to prevent the Legislature from declaring who shall be the "owner" of personalty for the purpose of taxation when the circumstances admit of a choice. Thus the trustee is the owner at common law of the trust estate with all the legal incidents and obligations of an absolute title, but the beneficiary of the trust estate is its equitable owner. So, the trustee as the legal owner residing within this state was taxed upon the stocks, bonds, securities, goods, and chattels, not permanently located elsewhere, at his place of residence, no matter where the *cestui que trust* resided. And this rule was followed to the extent that if there happened to be two or more trustees living in different tax districts of the state, each trustee was taxed in the city or county in which he lived

for the one-half or other fractional part of the taxable personalty held in trust, but should one of these trustees live without the state no tax was assessable for the fractional ownership represented by him. *Latrobe v. Baltimore,* 19 Md. 13, 21; *Tyson v. State,* 28 Md. 587; *Baltimore v. Sterling,* 29 Md. 49; *Appeal Tax Court v. Gill,* 50 Md. 377, 396; *Cherbonnier v. Bussey,* 92 Md. 422. The law so remained until the passage of the Act of 1902, ch. 486, which provided that all personal property, not exempt from taxation, in which any resident of a county of the state had an equitable interest, with the legal title in some other person or corporation residing within the state, shall be valued and assessed to the equitable owner in the county in which he resides to the extent of his equitable interest. The constitutionality of this enactment was challenged as being in conflict with section 51 of article 3 of the Constitution, but this court upheld the statute, except "in so far as it may conflict with the special provision made by section 51 of article 3 of the Constitution for the taxation of goods and chattels permanently located or of mortgages and the debts thereby secured, or that the act was intended to apply to leaseholders or any other interest in lands." *Baltimore City v. Safe Deposit and Trust Co.,* 97 Md. 659, 665. In the case cited this court said: "When property is held in trust there are two persons each of whom is in a certain sense its owner. The trustee who holds the title is the owner in a legal and technical sense, but the *cestui que trust* is the beneficial and substantial owner. We do not think that the Legislature has exceeded its power over the subject of taxation or violated any of the provisions of the Bill of Rights or Constitution in providing that personal property of the kind involved in this case, shall, for purposes of assessment and taxation, be treated as belonging to its substantial owner and not to its technical holder." In other words, the principle underlying this decision is that, where the ownership of any personalty or of any interest therein is susceptible of being ascribed, in whole or in part, to either of two persons, the Legislature may, for the purposes of taxation, select either as the owner against whom the

assessment shall be made and the tax shall be laid. This principle is applicable to the case on the present record, since the ownership of the partnership assets may be considered, for the purposes of taxation, to be either in the several members of the partnership or in the partnership itself as a legal entity. It seems reasonable to conclude that there is no conflict either with the letter or with the spirit of section 51, for the Legislature, for the purposes of taxation, to personify a group of individuals, who are combined for associated action and for profit, or for social, benevolent, educational, fraternal ends under a symbolic name; and to tax the property of the group in its assumed name instead of and in preference to the assessment and taxation of every individual member of the group for his share in the same property.

If the nature of a partnership be more carefully examined, the dual form of the ownership of partnership property will be apparent. At common law a partnership was not a *persona,* and its firm name was a short name or symbol to designate all the partners collectively and to show that certain transactions are intended as those of the firm and not of its individual member or members. And so the firm was regarded, not as a legal entity, but as an aggregate of the several partners, who were the joint owners of its property and jointly liable for its obligations. However, the partnership was formed to conduct collectively a business having its separate capital and stock, its own patrons and goodwill, its debtors and creditors. And, "whenever men act in concert for a common purpose, they tend to create a body which, from no fiction of law, but from the very nature of things, differs from the individuals of whom it is constituted." *A. V. Dicey, Law and Public Opinion,* p. 165; 29 *Harvard Law Review,* 404-426. So, the firm was personified for many purposes and it was in fact an entity, since what the partners do and have and hold as partners is distinct from their other affairs. The partnership accounts are kept as if it were a distinct legal entity. *Lindley on Partnership,* at page 110, notes that the firm is made debtor to each partner for what he brings into the stock, and each partner is made debtor to

the firm for all he takes out of the stock. And, in marshalling the assets of an insolvent firm, the common law conception of a partnership had to be constantly disregarded and the firm treated as a separate legal entity. *Jones v. Blum,* 145 N. Y. 333; *In re Haines,* 176 Pa. St. 354; *Haggett v. Hurley,* 91 Me. 542. As observed by Justice Holmes in *Francis v. McNeal,* 228 U. S. 695, 699, 57 L. Ed. 1029, 1030. "Since *Carey on Accounts* was made more famous by *Lindley on Partnership,* the notion that the firm is an entity distinct from its members has grown in popularity, and the notion has been confirmed by recent speculations as to the nature of corporations and the oneness of any somewhat permanently combined group without the aid of law." So, by the Bankruptcy Act of 1898, as construed by the Supreme Court of the United States in *Liberty National Bank v. Bear,* 276 U. S. 215, 73 L. Ed. 255, a partnership may be adjudicated a bankrupt as a distinct legal entity, without reference to the bankruptcy of the individual partners.

We thus see that, before the drafting of the Uniform Partnership Act, there were two theories with respect to the essential nature of a partnership at work within the compass of partnership law. The one was the common law or aggregate theory that the partners are the only legal persons owning the joint property and owing the partnership obligations; and the other was the mercantile or entity theory which regarded the partnership as in itself a legal person, owning the property and incurring obligations to the partners individually and to third persons. The act was first prepared on the mercantile or entity theory by the late James Barr Ames. After his death, another draft was prepared with the intention of formulating the law in accordance with the common law or aggregate theory. It is this last named codification which is substantially in force in Maryland. Code, art. 73A. Whether the act embodies the aggregate theory is a matter of dispute, as is shown by a discussion in the Harvard Law Review in which Judson A. Crane and William Draper Lewis were the protagonists. 28 *Harv. L. Rev.* 76; 29 *Harv. L. Rev.* 158, 291, 838.

It would seem that the act used both theories but, no matter the consistency of the act with either theory, the terms of the act apparently confer the substantial rights of ownership of the partnership property upon the partnership as an entity, and leave the rights of ownership in the partner rather subordinate and residuary. Code, art. 73A., secs. 2, 8, 9, 10, 12, 18, 25, 26, 36, 40. However, we express no opinion on the effect of the Partnership Act, since the problem under discussion is one of taxation and relates to the power of the Legislature under the Constitution. There seems no doubt that the Legislature would have had the power to have expressly declared either the partnership or the partners to be the legal entity for all partnership purposes. If so, it unquestionably has the lesser power to make the partnership a legal entity for a particular purpose, as, for example, to make it subject to rights and obligations, as has been done by making it capable of bringing or sustaining an action in the firm name, or by defining a "person" to include a "partnership" within the meaning of the terms of the Bills of Lading Act, Negotiable Instruments Law, Warehouse Receipts Act, Sales Act, Code, art. 14, sec. 53; art. 13, sec. 14; art. 14A, sec. 58; art. 83, sec. 97; see Workmen's Compensation Act, art. 101, sec. 65 (2).

So. there can be no constitutional objection to legislation which, for the purpose of valuation, assessment, and taxation, makes a choice between the theory that the partnership is the legal entity owning all the partnership property, and the theory that the partners are the only legal persons who own the partnership property. In making its election in favor of the mercantile or entity theory, the legislature brought harmony and uniformity in the administration of taxation of partnership personalty, since diversity of residence of the partners will no longer affect the situs of partnership personalty for the purpose of taxation, as all such property will be assessed in the name of the firm, and constitute a firm obligation.

Our conclusion, therefore, is that the Legislature had the constitutional power, and has declared a partnership to be a

146

distinct legal entity for the purpose of assessment and taxation; and that the firm of Riggs & McLane has its permanent place or seat of business in Baltimore City, and so has acquired a residence there which makes its stocks, bonds, and securities subject to assessment and taxation in Baltimore City, and not elsewhere. The judgment of the trial court will accordingly be affirmed.

*Judgment affirmed, with costs.*