## COUNTY COMMISSIONERS OF ANNE ARUNDEL COUNTY *v.* JAMES MATTHEW ENGLISH

[No. 56, October Term, 1943.]

*Decided December 15, 1943.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, ADAMS, and BAILEY, JJ.

*Emanuel Klawans,* with whom was *Benjamin Michaelson* on the brief, for the appellants.

*M. William Adelson,* with whom was *Michael Paul Smith* on the brief, *amicus curiæ* on behalf of the County Commissioners of Baltimore County.

*Philip H. Dorsey* for the County Commissioners of St. Mary's County.

*Albert J. Goodman* and *Edward L. Ward* for the appellee.

COLLINS, J., delivered the opinion of the Court.

The appellee, James Matthew English, at the time of the institution of the proceedings in this case, was the owner of a trailer worth about $600, consisting of living and sleeping quarters and a kitchenette, from which the wheels had been removed and which was resting on wooden blocks at Heintzeman's Trailer Grove in Anne Arundel County, Maryland. He, together with his family had been occupying this trailer house as a residence, place of abode and habitation continuously during the whole of the year 1942, and to date in 1943. This trailer house is not being used as a place of business or for any occupation, trade or calling, but it is exclusively a home for the appellee and his family. He pays a weekly rental to the landowner of $3 a week and pays for all electric current used in this trailer house. He also paid the license fee to the Commissioner of Motor Vehicles for the years 1942 and 1943, as provided in the 1939 Code, Article 56, Section 157. This trailer was duly assessed in the amount of $100 by the County Commissioners of Anne Arundel County for State and County property taxes for the year 1943, and under this assessment, as personal property, taxes were paid to the Treasurer of Anne Arundel County in the amount of $2.46. The appellee has been a resident of Anne Arundel County continuously since the year 1941,

and has been continuously employed since that time in the Bethlehem-Fairfield Shipbuilding Company plant at Fairfield in said county. Some trailers at that camp were worth around $2,500 and all have sleeping quarters and cooking quarters, and the majority also have living quarters and ice boxes. It is stipulated and agreed that the Heintzeman's Trailer Camp, where this trailer is located, has been fully examined by the Health Commission of Anne Arundel County and that it complies with the health regulations now enforced, as does also the appellee's trailer.

The General Assembly of Maryland, at the 1943 session, passed an Act, Chapter 983, applicable only to Anne Arundel County, now Article 2, Sections 486A, 486B, 486C, 486D and 486E of the Code of Public Local Laws of Maryland, 1930 Edition, which was duly signed, the essential parts of which, for the purpose of this case it is necessary to quote, being as follows:

"486A. On and after June 15, 1943, it shall be unlawful for any person, firm or corporation to maintain, reside in or operate in Anne Arundel County any trailer used or to be used in the habitation or living quarters of any person or persons, without having secured a license for the maintenance of each such trailer from the Clerk of the Circuit Court for Anne Arundel County. The annual license fee for each such trailer shall be Thirty ($30.00) Dollars per year, accounting from June 1, 1943, and June 1st in each year thereafter. * * *.

"All sums received by the Clerk of the Circuit Court for Anne Arundel County for issuance of trailer licenses shall be paid over monthly to the County Commissioners of Anne Arundel County and expended by it as a part of the general funds of Anne Arundel County.

"486B. The tenant or lessee of a trailer shall be the person charged with the primary responsibility of securing a license for the use of said trailer in accordance with Section 486A. If the owner, operator, tenant, or lessee of a trailer fails to secure a license, the license fee shall become a lien on such trailer. The lien on such

trailer may be enforced by sale at public auction by the County Commissioners of Anne Arundel County, after notice by advertisement for two successive weeks in one or more newspapers of general circulation published in Anne Arundel County. In case any trailer remains unlicensed for a period of five days, the owner of the land on which such trailer is located shall immediately notify the Building Inspector. It shall be the duty of the Building Inspector to enforce the provisions of this sub-title.

"486C. Any person, firm or corporation operating, maintaining or residing in a trailer in Anne Arundel County without having secured a license, as required by Section 486A shall be guilty of a misdemeanor and, upon conviction thereof by a court of competent jurisdiction, shall be fined not more than Twenty-five ($25.00) Dollars for each such violation, and each day that such violation shall continue shall be deemed a separate offense.

\*      \*      \*      \*      \*

"486E. The term 'trailer' as used in this sub-title means any structure of whatsoever kind or nature, utilized or capable of being utilized as the habitation or living quarters of any person or persons, which said structure is not in any manner whatsoever connected with the land on which it stands, except that connections for water, sewage and other similar facilities shall not be deemed a connection with the land within the definition herein set forth. The provisions of this sub-title shall be liberally construed in favor of the County Commissioners of Anne Arundel County, and nothing herein contained in any manner shall be held to require a restriction of the licensing provisions of this sub-title only to automobile trailers or similar trailers, but this subtitle shall apply to all structures within the definition herein set forth.

"Sec. 2. And be it further enacted, That if any provision, clause, sentence, phrase, or part of this Act, or

the application thereof to any person, firm or corporation or circumstances, is held invalid, the remainder of this sub-title and the application of such provisions to other persons, firms and corporations and circumstances shall not be affected thereby."

The appellee filed a bill of complaint in the Circuit Court for Anne Arundel County on June 15, 1943, alleging in substance the facts above stated and further that said Act of 1943, Chapter 983, *supra,* is illegal, arbitrary, discriminatory and unconstitutional and asked in said bill that said Act be declared unconstitutional, illegal and void. After answer filed by the County Commissioners of Anne Arundel County, testimony was taken in open court. On the 6th day of August, 1943, that court passed a decree declaring that Chapter 983 of the Acts of 1943 was unconstitutional, null and void and ordered the defendants to pay the costs. An appeal is taken to this court from that decree.

In approaching this question, this court is mindful that the presumption is in favor of the validity of the law and it assumes that the Legislature intended a lawful enactment. A reasonable doubt as to its constitutionality is enough to sustain the Act. We cannot be concerned with the question of policy or the wisdom of the statute, as such questions of usefulness of the law, policy and expediency are for the Legislature. *Baltimore v. State,* 15 Md. 376, 453, 74 Am. Dec. 572; *Harrison v. State,* 22 Md. 468, 491, 85 Am. Dec. 658; *Anderson v. Baker,* 23 Md. 531, 628; *Davis v. Helbig,* 27 Md. 452, 462, 92 Am. Dec. 646; *Fell v. State,* 42 Md. 71, 89, 20 Am. Rep. 83; *Shaffer v. Union Mining Co.,* 55 Md. 74, 80; *Painter v. Mattfeldt,* 119 Md. 466, 472, 87 A. 413; *Ruehl v. State,* 130 Md. 188, 194, 100 A. 75; *Oursler v. Tawes,* 178 Md. 471, 487, 13 A. 2d 763. In addition to the general presumption in favor of its validity, the Act specifically states that it shall be liberally construed in favor of the County Commissioners of Anne Arundel County. We must also recognize that the Legislature has the power of taxation over prop-

erty in this State except as restricted by the Federal and State Constitutions. *McLane v. State Tax Commission,* 156 Md. 133, 140, 143 A. 656; *Oursler v. Tawes, supra,* 482.

The question therefore for our decision is whether this taxing measure is forbidden by the Constitution of the United States and by the Constitution and Bill of Rights of the State of Maryland and more specifically by the Fourteenth Amendment of the Federal Constitution and by Articles 15 and 23 of the Maryland Declaration of Rights.

It is apparent that this Act is essentially a revenue-producing measure. The flat tax of $30 per year has no relation as to the cost to the county to enforce the statute. By payment of the tax, the licensee receives a license and no other conditions are required. There is no provision in the Act as to compliance with health regulations. When a person pays his $30 tax, he gets his trailer license, and there are no other conditions to be complied with in order to get that license. This makes it a revenue measure. It cannot therefore be held constitutional on the grounds that it is enacted under the police power. Judge Marbury said in the recent case of *Maryland Theatrical Co. v. Brennan,* 180 Md. 377, at pages 381 and 385, 24 A. 2d 911, 914: "In general, it may be said that when it appears from the act itself that revenue is its main objective, and the amount of the tax supports that theory, the enactment is a revenue measure. 'In general, * * * where the fee is imposed for the purpose of regulation, and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper, imposed by virtue of the police power; but where it is enacted solely for revenue purposes and its payment gives the right to carry on the business without any further conditions, it is a tax.' 33 *Am Jur., Licenses,* Paragraph 19, Page 340. * * * It has been generally held that where an act is passed under the police power, the money collected under it

must be not more than that necessary to carry out its provisions."

Let us first inquire whether this legislation is forbidden by the Fourteenth Amendment of the Federal Constitution and Article 23 of the Declaration of Rights of Maryland.

The Fourteenth Amendment of the Federal Constitution, of course, prohibits the denial of equal protection of the laws and the deprival of property without due process of law. Article 23 of the Declaration of Rights of Maryland prohibits the disseizing of a person's freehold, liberty or privileges except by the Law of the Land.

This court has previously ruled that Article 23 of the Maryland Declaration of Rights and the Fourteenth Amendment to the Federal Constitution and the term, "due process of law," as used in said amendment, are synonymous with the expression, "Law of the Land," as used in Article 23 of the Maryland Declaration of Rights. *Oursler v. Tawes, supra,* 483; *Niles, Constitutional Law,* page 46.

As to the alleged arbitrary and discriminatory classification and deprivation of property without due process of law by the Legislature in this Act, courts of last resort in many of the States of the Union have passed upon these matters. Of course, State constitutional provisions relative to raising revenue for the support of the respective State governments are by no means uniform. Although these decisions are helpful, they are not in accord and, of course, are not controlling in this case. *Oursler v. Tawes, supra,* 481. However, this court adopted in that case at page 483 of 178 Md., at page 768 of 13 A. 2d, a construction of what is meant by these two expressions where Judge Mitchell said: "First of all, it may be observed that the Federal Constitution has not undertaken to lay down any hard and fast rule with respect to due process of law, the equal protection of the laws, or as to privileges and immunities; and as tersely summarized in *Board of Com'rs, etc.,*

*v. Johnson County,* 173 Ind. 76, 89, N. E. 590, 593: "* * * Nor does the equal protection clause prevent the states from adjusting their systems of taxation in all proper and reasonable ways. * * * If all persons who are in like circumstances, or affected alike, are treated under the laws the same, there is no deprivation of the equal protection of the law. * .* * Conversely, a law which operates upon some persons or corporations, and not upon others like situated or circumstanced or in the same class, is invalid. * * * So, classes of persons may be exempt from taxation upon reasonable grounds, or different kinds of property taxed in different ways. * * * Persons engaged in the same line of business may be classified, and different provisions applied to each class, without depriving any of them of the equal protection of the laws. * * * Corporations, individuals, wholesale and retail dealers, domestic and foreign corporations, may be separately classified and taxed differently, so long as the constituent classes are treated alike. * * * Whether a statute is applicable to a large or small class is a legislative, and not a judicial question. * * * But taxation is not uniform, or equal, when it applies to a portion of a class, and omits a portion. * * * The classification itself must be based upon natural reasons, upon reasons which naturally inhere in the subject-matter, upon real difference existing between the classes, and so as to produce no distinction between members of the same class'."

Although the State, for the purpose of raising taxes, has the right to impose upon members of a class tax burdens, it cannot be exerted so as to impose upon members of a selected class burdens which are not shared by others in like circumstances. As this court said through Judge Offutt in the case of *Dasch v. Jackson,* 170 Md. 251, at pages 264 and 265, 183 A. 534, 539: "For those 'who make the law' are to govern by promulgated, established laws, not to be varied in particular cases, but to have one rule for rich and poor, 'for the favorite at court and the countryman at plough.' *Locke on Civil*

*Government,* Sec. 142; *Cooley, Const. Lim.,* 810. 'Equality of rights, privileges, and capacities unquestionably should be the aim of the law; and if special privileges are granted, or special burdens or restrictions imposed in any case, it must be presumed that the legislature designed to depart as little as possible from this fundamental maxim of government.' *Cooley, Const. Lim.,* 813. In *Connolly v. Union Sewer Pipe Co.,* 184 U. S. 540, 22 S. Ct. 431, 439, 46 L. Ed. 679, it was said: 'The difficulty is not met by saying that, generally speaking, the state when enacting laws may, in its discretion, make a classification of persons, firms, corporations, and associations, in order to subserve public objects. For this court has held that classification "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. * * * But arbitrary selection can never be justified by calling it classification. The equal protection demanded by the 14th Amendment forbids this. * * * No duty rests more imperatively upon the courts than the enforcement of those constitutional provisions intended to secure that equality of rights which is the foundation of free government. * * * It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the 14th Amendment, and that in all cases it must appear, not only that a classification has been made, but also that it is one based upon some reasonable ground,—some difference which bears a just and proper relation to the attempted classification,—and is not a mere arbitrary selection".' So, while the state has the power, for purposes of taxation, or for the legitimate protection or promotion of some substantial public interest to classify the objects upon which the power is exercised, the classification must have some rational basis, and the operation of the law upon persons or property within the class must be uniform and equal, 12 *C. J.* 1159, 1274, 1128 et seq., 1136; 6 R. C. L. 218,

369, 373." Although, as pointed out, the counties of this State are faced with a large influx of people necessary for war work in industrial centers and, as a result, are compelled to go to great expense in providing schools and other necessities at public expense, no differentiation should be made between those living in a house on a temporary foundation and those living adjoining in a house on a permanent foundation. The family that lives in a trailer should not be made to pay a tax greater than his neighbor who lives in a humble cottage. No additional expense to the county or State is entailed because it is on blocks rather than on a foundation. It is not just classification to make the person who occupies a small trailer worth $600 pay the same tax as one who owns or occupies much more sumptuous quarters in a trailer costing $2,500. It is not uniform or equal taxation to make a family who, on account of economic necessity, lives in a shanty boat pay a tax which a more prosperous citizen who occupies a mansion is not compelled to pay. In such times as these when labor is seriously needed in war plants and housing facilities are not adequate, should people who are willing to live in a trailer be specifically taxed for that reason? This Act is not a police regulation. This trailer and the site where it is located offends no sanitary regulation. The Act in question is not one for the regulation of the health, comfort, safety or welfare of the community. This Act deprives the owner of a property right essential to a trailer which is the right to occupy it as a place of habitation. According to the record, the trailer in the case now before us is worth $600, and it is assessed for $100. It is also shown that there are about eighty-four trailers in this camp, ranging in value from $300 to $2,500. It is possible, of course, for the taxing authorities to assess these trailers at their actual value as their contribution to the general cost of the State and County governments. Being movable, on the other hand, it is apparent that there might be difficulty in the collection of the taxes. Because some re-

move their trailers in order to escape taxation, all occupants of structures not connected with the land should not be so classified. This classification by the Legislature is contrary to the recent interpretation of "due process of law" and "Law of the Land" as adopted by this court and defined recently in the cases of *Oursler v. Tawes, supra,* and *Dasch v. Jackson, supra.* We must therefore agree with the chancellor that this tax is arbitrary and does not have proper regard to uniformity and equality and is therefore forbidden by the Fourteenth Amendment of the Federal Constitution and Article 23 of the Maryland Declaration of Rights. *State v. P., W. & B. R. R. Co.,* 45 Md. 361, 379, 24 Am. Rep. 511; *Maryland Jockey Club v. State,* 106 Md. 413, 419, 67 A. 239; *State v. Shapiro,* 131 Md. 168, 171, 101 A. 703; *Grossfield v. Baughman,* 148 Md. 330, 335, 129 A. 370; *McLane v. State Tax Commission, supra,* 156 Md. 142, 143 A. 656; *Grand Lodge of Maryland, Knights of Pythias v. Baltimore,* 157 Md. 542, 549, 146 A. 744; *Dasch v. Jackson, supra; Oursler v. Tawes, supra; Tyler v. United States,* 281 U. S. 497, 504, 74 L. Ed. 991.

Article 15 of the Maryland Declaration of Rights, as amended by the Act of 1914, Chapter 390, provides: "* * * that the General Assembly shall, by uniform rules, provide for separate assessment of land and classification and sub-classifications of improvements on land and personal property, as it may deem proper; and all taxes thereafter provided to be levied by the State for the support of the general State Government, and by the counties and by the City of Baltimore for their respective purposes, shall be uniform as to land within the taxing district, and uniform within the class or subclass of improvements on land and personal property which the respecting taxing powers may have directed to be subjected to the tax levy; yet fines, duties or taxes may properly and justly be imposed, or laid with a political view for the good government and benefit of the community." This court said in reference to this amendment, in the case of *Oursler v. Tawes, supra,* 178 Md.,

pages 485 and 486, 13 A. 2d, page 769: "In connection both as to classifications and exemptions it may also be observed that a different construction has been placed by this court upon the concluding paragraph of Article 15, from that placed upon the preceding paragraphs. The late Judge Alfred Niles in his work on Maryland Constitutional Law, pages 32, 33, makes the following comment: 'The last clause of the 15th article of the Declaration of Rights is considered as enlarging the taxing power of the Legislature. And taxes laid under this enlargement of power are of a different class from "property taxes" * * *. The rule of equality is applicable to "property taxes." "Taxes laid with a political view" are not "property taxes" but are such taxes as the Legislature may levy, not upon property, but upon occupations, privileges, contracts and things of that nature, and as to those the rule of equality is not applicable. * * * Summing up the rule and its exceptions, we may say, in a general way, that the Courts, in construing this article, have separated the taxation which may be levied upon the inhabitants of Maryland into two kinds: the one, taxes upon the individual according to his property; the other, taxes laid with a political view for the good government and benefit of the community. As to taxes of the first class, the Legislature is prohibited from taxing the same individual twice in regard to the same piece of property. * * * It may, however, exempt certain classes of property with a view to the good of the community, provided the classification is reasonable, and the exemption does not produce material inequality. * * * In regard to the second class * * * there seems to be no limitation laid upon the power of the Legislature by this article, except that such taxes are not to be laid upon property as such'." Judge Niles, at page 34, *supra*, in reference to special taxes laid with a political view, also said: "These taxes are, of course, subject to the provisions in the State and Federal Constitutions, forbidding the taking of property without due process of law, and the denial of the equal protection of the law."

It is claimed that the tax in question is one laid with a political view and is not a property tax, but such a one at the Legislature may levy upon occupations, privileges, contracts and things of that nature, and therefore there is no limitation laid upon the power of the Legislature by this Article except that this tax be not laid upon property. It is contended that this is a "use" tax and not a property tax. Whether a particular tax is one on property or on an occupation or privilege cannot be determined by the application of any fixed rule. "Ordinarily a tax imposed on the carrying on of any business, trade, profession or calling is not a tax on property as distinguished from an occupation tax." *Cooley on Taxation,* Section 675, pages 3380, 3381. It was said in the case of *Blaustein v. Tax Commission,* 176 Md. 423, 426, 4 A. 2d 861, 862: "No author or court seems to have found an exact definition for excise tax. Ordinarily it is regarded as a tax on business or occupation. So many objects of taxation are called excises or imposts that they may be generally defined as any kind of tax which is not directly on property or the rents or incomes from real estate. 1 *Bouv. Law Dict.,* Rawle's [3d Rev.], 1109." In discussing the difference between a privilege tax and a tax on property, Judge Sloan said in the case of *Maryland Racing Commission v Jockey Club,* 176 Md. 82, at page 88, 4 A. 2d 124, at page 127: "The difference between this tax and that on real and personal property is that the property must pay regardless of the ownership, while the business man can decide whether he will continue in business or not, and thus decide whether there will be a tax or no tax, with the license or business tax, if the decision is to remain or continue in business, payable in advance." In the present case it is contended that the difference between the tax on real and personal property and the tax on the privilege of occupying the trailer as a habitation is that the property must pay regardless of ownership while the person can decide whether he will occupy the trailer as a home and thus decide

whether there will be a tax or no tax with the license or privilege tax if the decision is to occupy the trailer.

Appellants contend that the payment of this privilege tax or license tax can be avoided by not using his trailer as a place of habitation. However, a trailer is constructed essentially as a place in which to live. This is axiomatic. In the instant case the trailer has sleeping quarters, a living room and a kitchenette. What else could it be used for other than a place of habitation? It is so used when persons travel in it. It is contended that, if the trailer were placed in storage, the owner would thereby avoid the tax. To do this would amount practically to confiscation of the property. Of what value is a trailer in storage? The practically exclusive use of a trailer is a place of habitation, and in the instant case, the owner who pays the personal property taxes and the motor vehicle tax on the trailer is compelled to pay additional tax for living in it. By no stretch of the imagination could occupying the trailer as a place of habitation be considered an occupation or a business. Everyone does not have to go in business, but everyone has to have a home or shelter. Occupying a home is not a privilege. It is essentially a necessity. Here shelter is necessary to life itself. To meet this necessity, the trailer is constructed as a place of habitation, and it is the principal use to which it can be put.

If the tax is one upon a single use to which a certain property can be put, it can be classified as a tax upon the use of the property and not upon the property itself. For instance, the Supreme Court of the United States, in the case of *Bromley v. McCaughn,* 280 U. S. 124, 50 S. Ct. 46, 74 L. Ed. 226, ruled that a gift tax was a tax laid upon the exercise of a single one of the powers incident to ownership, namely, the power to give the property owned to another, and therefore was not a direct tax on the property. It was said in that case at page 138 of 280 U. S., at page 48 of 50 S. Ct., 74 L. Ed. 226: "Even if we assume that a tax levied upon all the uses to which property may be put, or upon the exercise

of a single power indispensable to the enjoyment of all others over it, would be in effect a tax upon property, see *Dawson v. Kentucky Distilleries,* 255 U. S. 288 (41 S. Ct. 272, 65 L. Ed. 638), and hence a direct tax requiring apportionment, that is not the case before us." However, where the tax is on one of the only uses of which the property is capable, the whole value of that property depends upon the right to that use. In the present case the owner is the occupier of the property and the whole value depends upon the right to occupy the trailer as a place of habitation. In the case of *Dawson v. Kentucky Distilleries & Warehouse Co.,* 255 U. S. 288 (41 S. Ct. 272, 65 L. Ed. 638), where the State of Kentucky imposed upon every person engaged in the business of manufacturing whisky or in the business of owning and storing whisky in bonded warehouses in that State, an annual license tax upon all whisky, either withdrawn from bond or transferred in bond from Kentucky to a point outside that State, in holding such tax as one on property and not a "use" tax, Justice Brandeis said at page 294 of 255 U. S., at page 274 of 41 S. Ct., 65 L. Ed. 638: "The tax might be said to be upon the act of removal from the bonded warehouse within the state. But, as stated by the lower court, 'the thing really taxed is the act of the owner in taking his property out of storage into his own possession (absolute or qualified) for the purpose of making some one of the only uses of which it is capable; i. e., consumption, sale or keeping for future consumption or sale. * * * The whole value of the whisky depends upon the owner's right to get it from the place where the law has compelled him to put it, and to tax the right is to tax the value.' To levy a tax by reason of ownership of property is to tax the property. Compare *Thompson v. Kreutzer,* 112 Miss. 165, 72 So. 891; *Thompson v. McLeod,* 112 Miss. 383, 73 So. 193; L. R. A., 1918C., 893; Ann. Cas., 1918A, 674. It cannot be made an occupation or license tax by calling it so. See *Flint v. Stone Tracy Co.,* 220 U. S. 107, 148-150, 31

S. Ct. 342, 55 L. Ed. 389, 412, 413, Ann. Cas., 1912B, 1312; *Zonne v. Minneapolis Syndicate,* 220 U. S. 187, 31 S. Ct. 361, 55 L. Ed. 428; *United States v. Emery-B.-T. Realty Co.,* 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825. "We are cited in the well-prepared briefs in this case other Supreme Court cases interpreting taxes levied to collect customs and affirming state courts in upholding taxes laid to prevent persons avoiding state sales taxes and also cases arising under the police power. It is not necessary to discuss these as they are not in point. The tax in the instant case, being one upon one of the only uses of which the trailer is capable, namely as a place of habitation, is therefore a property tax. This being a property tax, it is, of course, forbidden by Article 15 of the Declaration of Rights of Maryland as amended, because, being personal property, the tax must be uniform, and where the tax is the same upon a $600 trailer and upon a $2,500 trailer, there is, of course, no uniformity. This court has ruled many times that a tax upon property must survive the test of uniformity and equality and not be arbitrary and unreasonable. Judge Robinson said in the case of *Tyson v. State,* 28 Md. 577, at page 587, in reference to Article 15 of the Declaration of Rights: "Arbitrary taxes on property without regard to value, are expressly prohibited, and all measures for the collection and imposition * * * upon property, are required to conform to this general principle of equality." *State v. Cumberland & Pennsylvania R. R. Co.,* 40 Md. 22; *State v. P., W. & B. R. R. Co., supra,* 45 Md. 377; *United States Electric Power & Light Co. v. State,* 79 Md. 63, 28 A. 768; *Grand Lodge of Maryland, Knights of Pythias v. Baltimore, supra.* Other forms of taxation to reach the nomadic type of people who reside in such structures as these have been suggested. At this time, of course, only the Act in question is before us.

It is also contended that in placing the tax upon the person who makes the particular use of the trailer rather than upon the owner, the Legislature has plainly desig-

nated that it is a tax upon the particular use and not upon the ownership. The legislative designation is entitled to much weight, but it is not controlling. It cannot be made an occupation or license tax by calling it so. *Dawson v. Kentucky Distilleries, supra.* The occupant is the owner. While the occupant is primarily responsible for the payment of the tax, if not paid, it becomes a lien on the trailer, which requires the owner to pay the tax or lose his property, and in the last analysis, the tax is the liability of the owner. The constitutional validity of a law is to be tested by what may by its authority be done. *Stuart v. Palmer,* 74 N. Y. 183, 30 Am. Rep. 289; *Ulman v. Baltimore,* 72 Md. 587, 596, 20 A. 141, 21 A. 709; *Levering v. Park Commissioners,* 134 Md. 48, 53, 106 A. 176; *Spann v. Gaither,* 152 Md. 1, 11, 136 A. 41.

This Act, imposing a tax forbidden by the Fourteenth Amendment of the Federal Constitution and by Articles 15 and 23 of the Maryland Declaration of Rights, is unconstitutional, null and void.

*Decree affirmed, with costs.*