## McBRIETY et al. v. MAYOR AND CITY COUNCIL OF BALTIMORE et al.

[No. 147, September Term, 1958.]

224

*Decided February 20, 1959.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Wilson K. Barnes,* with whom were *Bernard M. Goldstein* and *Leonard Goodman* on the brief, for the appellants.

*W. Thomas Gisriel, Assistant City Solicitor of Baltimore,* with whom was *Hugo A. Ricciuti, Acting City Solicitor,* on the brief, for the appellees.

HORNEY, J., delivered the opinion of the Court.

This is an appeal by Frederick P. McBriety and other property owners and taxpayers (the owners) from a decree of Circuit Court No. 2 of Baltimore City *declaring* that Ordinance No. 1077 [1] (the ordinance) of the Mayor and City Council of Baltimore (the City), dated November 7, 1957—which provides for the registration and licensing of certain rooming houses and multiple family dwellings—was valid, and *dismissing* the supplemental bill of complaint with costs.

On July 2, 1957, the owners filed an original bill challenging the validity of a similar ordinance (No. 994), dated June 10, 1957. After a hearing on the demurrer, the court (Cullen, J.) overruled it and issued an interlocutory injunction forbidding enforcement of Ordinance No. 994 pending the litigation relative to that ordinance. The City reacted by causing the repeal and reenactment of the ordinance which is the subject of this appeal. When reenactment had been accomplished, the owners, with leave of the court, filed a supplemental bill on November 14, 1957, on behalf of themselves and all other taxpayers. A motion to extend the injunctive

---

1. Ordained as Chapter 15A [Licenses for Rooming Houses and Multiple Family Dwellings] of Article 5 [Building Regulations] of the Baltimore City Code (1950 ed.).

relief to the reenacted ordinance was denied by the court (Cullen, J.).

The individual plaintiffs-appellants, eleven in number, are, owners, who rent or lease their properties to tenants of more than two dwelling units or two dwelling units and another occupancy. The corporate plaintiff-appellant is a taxpayers' protective association representing a membership of one hundred and seven property owners. The defendants-appellees are the City, the Board of Estimates, several city officials, the Police Commissioner, the Urban Renewal and Housing Commission and the Attorney General of Maryland. All of the defendants, other than the Attorney General, the City and the Police Commissioner, are city officials or agencies.

The comprehensive, and somewhat novel, ordinance is, as its title and recitals indicate, aimed at the licensing and periodic inspection of certain rooming houses and multiple family dwellings and combinations thereof in order to eliminate the causes and unnecessary burdens and hazards of overcrowding and, in the public interest, to assure compliance with existing laws and ordinances for the better protection of the public health, safety, morals and general welfare. There was also a recital of the inadequacy of the "present" rooming house license fees to provide for the required inspectional service.

In substance, the ordinance provides that "[no] person shall conduct or operate * * * any rooming house, multiple family dwelling, or any combination thereof, without * * * obtain[ing] a license * * *," and defines certain terms used in the ordinance such as the meaning of "person," "operator," "rooming house," "multiple family dwelling," "or any combination thereof," "dwelling unit" and "rooming unit." A "multiple family dwelling" is defined as a house, building or combination of buildings used or intended to be used "for more than two dwelling units or two dwelling units and any other occupancy," and includes apartment houses, garden apartments and apartment hotels. Other provisions set forth certain administrative and operational procedures and requirements of the ordinance. The annual license fees were fixed at $3 per rooming unit, $5 per dwelling unit and $3 and $5,

respectively, for combinations of rooming and dwelling units, with maximums of $200 in each case.

The supplemental bill alleges in effect that the ordinance is unconstitutional and illegal because:

[i]. It violates Article 23 of the Declaration of Rights in the Constitution of Maryland and the Fourteenth Amendment of the Constitution of the United States by denying "due process of law" and the "equal protection of the laws" in that—

(a) The intended licensing of the "operation" of a multiple family dwelling as defined in the ordinance is neither reasonable nor required for the protection of the health, safety, morals and general welfare of the public and is an unreasonable and arbitrary exercise of the police power;

(b) The ordinance is unnecessary for the protection of the public interests since it adds nothing to the existing and adequate building, police, health and fire regulations;

(c) The intended classification of multiple dwellings— because it excludes one and two unit dwellings—is an abuse of the police power and bears no reasonable relation to the public interests;

(d) The license fees bear no reasonable relation to the expenses of the intended licensing and inspection services;

(e) There are unlawful delegations of legislative power to the building inspection engineer, the commissioner of health and the chief of the fire department;

(f) There is an unlawful delegation of power to the police commissioner, who is an official of the State;

(g) The provisions of the ordinance are vague, indefinite, and ambiguous;

(h) The provisions of the ordinance for the revocation or denial of licenses are invalid;

(i) The ordinance is discriminatory;

(j) There is no provision for reinstatement or reissuance of a license after revocation; and [2]

2. Unless otherwise specified herein references to sections refer to sections of the ordinance.

(k) Section 15(b) of the ordinance invalidly seeks to impose criminal liability by a conclusive presumption.

[ii]. It violates Section 28 of the City Charter in that the title is defective and deceptive.

[iii]. It may be construed as a revenue measure, and if it is, it violates Article 15 of the Declaration of Rights.

All of the defendants answered and denied the illegality and unconstitutionality of the ordinance.

There was testimony that there was no overcrowding and that the ordinance was discriminatory and unnecessary because it excludes one-and-two unit dwellings and imposes an additional special tax on multiple family dwellings; because properties which are less safe and have more occupants are not licenseable under the ordinance; because the existing regulations were adequate and were being enforced; because there were more deaths and injuries from fires and other hazards over a six year period in one-and-two family dwellings than in three-or-more family dwellings; and because the ordinance had destroyed the value of multiple family dwellings as income producing investments.

But there was also testimony that there was no discrimination between the one-and-two unit dwellings and the multiple family dwellings as defined in the ordinance; that there were more violations of the health and fire codes in the buildings having more than two dwelling units than in those with less dwelling units; that the ordinance was necessary from the standpoint of health because it was possible to do a better preventative job with it than without it; that there were unlawful increases in the number of separate family units of which the city officials had no knowledge; that the number of dwelling units in a three-story house was of more importance from a fire safety standpoint than the number of occupants of the building because more gas and electrical units would be in use; and that the ordinance was part and parcel of the "Baltimore Plan" to control slum conditions and blight areas.

Under § 6 of the Charter of Baltimore City (1949) the Mayor and City Council were given power:

"[T]o provide for the preservation of the health of all persons" [paragraph 11]; "to license, tax and regulate all businesses, trades, vocations or professions" [paragraph 16]; "to have and exercise * * * all the power commonly known as the [p]olice [p]ower to the same extent as the State has or could exercise said power" [paragraph 24]; and "to pass any ordinance, not inconsistent with the provisions of this Charter or the laws of the State, which it may deem proper in the exercise of any of the powers, either express or implied, enumerated in this Charter, as well as any ordinance as it may deem proper in maintaining the peace, good government, health and welfare of Baltimore City" [paragraph 39].

There is no room for doubt that under this broad and comprehensive grant of charter powers the City has full power and authority not only to *license* for regulatory purposes but also to *tax* for revenue purposes the rooming houses, multiple family dwellings and combinations thereof, defined in the ordinance, which is the bone of contention in this case, unless for reasons, which we shall presently consider, the ordinance is unconstitutional or illegal. See *Jacobs v. Baltimore,* 172 Md. 350, 191 A. 421 (1937), [*license* to sell coal at retail]; *Meushaw v. State,* 109 Md. 84, 71 A. 457 (1908), [*tax* on commission men]. See also *Mason v. Cumberland,* 92 Md. 451, 48 A. 136 (1901), [license fee for vehicles using streets]. Cf. *Cambridge v. Water Co.,* 99 Md. 501, 58 A. 442 (1904), [license fee for fire-plugs].

There is also a presumption that a municipal ordinance is reasonable and for the public good, and the burden of proving the contrary is on those who attack it. *Lewis v. M. & C. C. of Cumberland,* 189 Md. 58, 54 A. 2d 319 (1947); *Vet. Taxi Ass'n v. Yellow Cab Co.,* 192 Md. 551, 65 A. 2d 173 (1949). In *Tar Products Corp. v. Tax Comm'n,* 176 Md. 290, 297, 4 A. 2d 462 (1939), we stated that "reasonable doubts as to the validity of an ordinance should be resolved in its favor." And in *Md. Adv. Co. v. City of Baltimore,* 199

Md. 214, 222, 86 A. 2d 169 (1952), we held that "[t]he mere fact that an exercise of the police power may cause expense or loss [to an individual] does not overcome the presumption of validity."

This brings us to the consideration of whether the ordinance in question is unconstitutional or illegal for any of the reasons urged by the owners.

[i]

(a). *Reasonableness.* The ordinance has a reasonable relation to and is required for the protection of the public interests, and its enactment was not an unreasonable exercise of police power. While it is recognized that the law-making body may not arbitrarily or unreasonably exercise its power to regulate a business, trade or occupation, or to impose a tax thereon in such manner as would deprive a person of a right, privilege, immunity or property to which he is entitled, as is stated in *Dasch v. Jackson,* 170 Md. 251, 183 A. 534 (1936), and in a number of other cases in this and other jurisdictions, it is certain, nevertheless, that the City Council has full power and authority to enact, within constitutional limits, such regulations as may be appropriate and necessary for the protection of the public interests. Although it is not conclusive, the last recital in the ordinance states that the City Council found that the licensing and inspection of rooming houses, multiple family dwellings or combinations thereof was required to protect the public health, safety, morals and general welfare. Such a finding is entitled to great weight and courts will not ordinarily interfere to enjoin the enforcement of an ordinance embodying such precepts unless it is shown that the ordinance is arbitrary or unreasonable. See *M. & C. C. of Balto. v. Wollman,* 123 Md. 310, 91 A. 339 (1914), and the cases therein cited. Moreover, the chancellor found as a fact that the finding of the City Council was corroborated by the weight of the testimony produced at the hearing before him and we do not find that he was clearly wrong. Maryland Rule 886 a.

We think it is clear that the operation of the business of renting or leasing housing accommodations has a direct re-

lationship to the public interests in the City of Baltimore and that the regulation thereof afforded by the ordinance is not only reasonable but is salutary. The argument advanced by the owners—which they claim was ignored by the chancellor —to the effect that the privacy of a lessee is not subject to regulation (a truth which the defendants-appellees do not even contest), overlooks the fact that it is the operators, who engage in the business of leasing multiple family dwellings, that are subjected to regulation by the terms of the ordinance, and not the tenants who lease from them. Moreover, it is not likely that a tenant would object to an occasional inspection of his place of abode for health, fire and other hazards. In any event, since no lessee is a party plaintiff to this action, the argument advanced by the lessors—asserting on behalf of a hypothetical lessee a potential violation of a constitutional right—is premature. If, hereafter, a lessee should assert such right on his own behalf, the question, which will then be real and live, can be answered. Cf. *Simpson v. Board of Appeals,* 218 Md. 222, 146 A. 2d 37 (1958).

(b). *Necessity.* Whether the ordinance was actually necessary is a question with which the courts are not concerned. A court does not pass upon the wisdom of an ordinance nor approve or disapprove it. The function of the courts, if and when the question is raised, is to ascertain whether the ordinance exceeds constitutional limits. *Givner v. Commissioner of Health,* 207 Md. 184, 192, 113 A. 2d 899 (1955). Moreover, the courts assume that municipal authorities have full knowledge of local conditions and that their determination, in the light of such knowledge, with respect to the necessity and reasonableness of a regulation to promote the public interests, is valid unless the contrary is affirmatively shown. 6 McQuillin, *Municipal Corporations* §§ 24.30, 24.52 (3rd ed. 1949). In this case, the City Council also found, and so recited—and there was evidence to the same effect—that many buildings were used to house more rooming and dwelling units than was permitted by law and that other buildings had been converted into such units without the permission of the building inspection engineer, which, not only resulted in a serious overcrowding affecting the health, safety and gen-

eral welfare of the occupants, but was responsible to some extent for the deterioration of parts of the city into slum areas. The owners, in contending that the ordinance was not necessary to promote the public interests, assert that there is no overcrowding and that, in any event, the ordinance contains no new or additional provisions with regard to multiple family dwellings which were not in the then existing regulations. The chancellor found, and we see no reason to disturb his finding, that without registration, licensing and annual inspections the public interests would not be adequately protected and that the means employed by the ordinance to enforce the provisions of the building, health and fire codes would not amount to an unreasonable and oppressive interference with personal and property rights but, on the contrary, constituted a reasonable exercise of the police power. The general rule is that the exercise of police power is largely within the discretion of legislative bodies and that courts will not interfere except to correct a misuse or an abuse of power. In any event, where the relation of the regulation to the police power is fairly shown, as it was in this case, a court will not ordinarily intervene. *Standard Oil Co. v. Marysville*, 279 U. S. 582 (1929) ; 6 McQuillin, *op. cit. supra* § 24.30. We know of no reason why the City Council may not enact, repeal and reenact its regulations with respect to its building, health and fire codes whenever the Council in the exercise of its discretion may deem it necessary or desirable so long as such legislation remains within the realm of reasonableness.

(c), (i). *Abuse of Power and Discrimination.* The classification of more-than-two dwelling units [or two dwelling units and another use] as "multiple family dwellings"—and the exclusion of one-and-two dwelling units—was not an abuse of police power nor was it discriminatory, and such classification bore a reasonable relation to the public interests. The owners, in addition to claiming that fire and other hazards were greater in single family dwellings than in multiple [two or more] family dwellings, contend that the ordinance does not apply equally to situations substantially identical or equally to situations affecting the public interests. A mass of evidence and exhibits as to this subject was offered by the

owners, much of which is difficult to understand; some is claimed by the City to be misleading if not erroneous; and there was also evidence to the contrary offered by the City, but, be that as it may, the chancellor found that dangers were more prevalent in buildings containing more than two dwelling units than in those having only one-or-two dwelling units and we see no reason to disturb his ruling. He further found that, from health and fire safety standpoints, the number of dwelling units is of more concern than the height in stories or the number of persons who reside in one-and-two dwelling units. Finally, he found that the classification of multiple family dwellings in accordance with the ordinance was reasonable and was neither arbitrary nor discriminatory. We agree. This Court has consistently held that "the question of classification [for the purpose of license fees] is [primarily] for the legislature; and courts will not interfere unless the classification is clearly unreasonable or arbitrary." *Bevard v. Baughman,* 167 Md. 55, 68, 173 A. 40 (1934). See also *Ruggles v. State,* 120 Md. 553, 87 A. 1080 (1913). In the *Givner* case, *supra,* which involved a health regulation requiring separate bathing facilities for each dwelling unit except two-story dwellings housing not more than two families, we said at p. 193: "Classification always involves the drawing of a line, and we are not prepared to say that the line drawn is not based on any rational distinction." Nor are we prepared to say now that the line drawn in the instant case is an abuse of police power or that the ordinance is discriminatory. And, in *Wampler v. LeCompte,* 159 Md. 222, 150 A. 455 (1930), we held that a classification concerning entitlement to a duck-blind license, which had a reasonable basis, did not violate the equal protection clause because, in some applications, it resulted in inequality.

The decisions in other jurisdictions are to the same effect. The smoke-abatement ordinance before the Court in *Board of Health v. New York Cent. R. Co.,* 4 N. J. 293, 72 A. 2d 511 (1950), which excepted one-and-two family houses from its operation, was held valid. At p. 515, it was said:

> "The exigency and the remedy were peculiarly within the judgment of the local legislative body;

and unless there be an utter lack of basis for the classification, the action taken is not discriminatory in the constitutional sense. * * * The Legislature may make distinctions of degree having a rational basis; and they will be presumed to rest on that basis if there be any conceivable state of facts which would afford reasonable ground for its action."

See also *Gaulden v. Kirk,* 47 So. 2d 567 (Fla., 1950), [statute was not invalid as unreasonable, discriminatory or arbitrary because it exempted owners of two-family apartments]; *Fulgum v. Mayor, etc., of City of Nashville,* 8 Lea 635 (Tenn., 1881), [exemption of hotels of less than ten rooms from payment of a license tax was a reasonable and valid classification].

In addition to claiming that the ordinance is discriminatory as to its application among multiple family dwellings, the owners also contend that the ordinance is discriminatory as to the license fees because there is a maximum; because one bedroom dwelling units have the same license fee as a five bedroom dwelling unit; and because religious as well as other eleemosynary and charitable institutions are exempted from paying the license fee, but they cite no authorities for such contentions, and we know of none, holding that for any of these reasons, an ordinance would be discriminatory.

(d) and Question [iii]. *Revenue Measure.* The license fees, when averaged over a prospective five-year period, bear a reasonable relation to the expense of licensing and to the inspection services renderable under the ordinance. The owners, contending that the charges collectible under the ordinance are license fees rather than taxes, claim that the amount of the fees to be collected must be limited to the expenses to be incurred in enforcing the ordinance, citing *City of Baltimore v. Canton Co.,* 186 Md. 618, 47 A. 2d 775 (1946), *Anne Arundel County v. English,* 182 Md. 514, 35 A. 2d 135 (1943), and *Theatrical Corp. v. Brennan,* 180 Md. 377, 24 A. 2d 911 (1942). However, the chancellor found as a fact that the estimated expenses over a five-year period would average several thousand dollars more than the average annual income from fees during the same period, and we are

unable to say he was clearly wrong. Of course, if the charge is only a tax and not a license fee, it would be invalid for the reasons set forth in the *English* case where it was held—because the principal use of a trailer was a place of abode and its use for that purpose represented its whole value—a tax upon a trailer used for a home was a tax on property for revenue purposes and not a tax on a business, trade or other occupation for regulatory purposes. But, as we see it, the ordinance now under consideration is not a revenue producing measure. The *Theatrical Corporation* case makes this clear. Therein we stated that in general "where the fee is imposed for the purpose of regulation, and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper." The license fee exacted here not only permits the holder to carry on the business of renting or leasing but requires him to comply with certain other conditions before he is entitled to exercise, or to continue to exercise, the privilege afforded him by the license. Nor does it appear that the income from the license fees will be more than will be necessary to carry out the provisions of the ordinance. Cf. *City of Baltimore v. Canton Co., supra.*

In addition to claiming that the estimated license fees do not bear a reasonable relation to the estimated expenses, the owners also contend that the ordinance violates Article 15 of the Declaration of Rights [requiring uniformity within the taxing district] and also § 5 of the Charter [requiring uniformity in the rate throughout the City]. These contentions have already been answered, but we might add that, even if we assume, without deciding, that the license fee is a revenue measure, it is not a direct tax on property, but is a tax on the business of renting or leasing housing accommodations. As was said in *Maryland Racing Comm. v. Maryland Jockey Club,* 176 Md. 82, 88, 4 A. 2d 124 (1939):

> "The difference between this tax and that on real and personal property is that the property must pay regardless of the ownership, while the business man can decide whether he will continue in business or

not, and thus decide whether there will be a tax or no tax * * *."

(e), (f). *Delegation of Power.* The power and authority conferred upon the building inspection engineer, the commissioner of health and the chief of the fire department to adopt proper and necessary rules and regulations to enforce the ordinance for the protection of the public interests is not an unlawful delegation of legislative power. *Pressman v. Barnes,* 209 Md. 544, 121 A. 2d 816 (1956); *Givner v. Commissioner of Health, supra; Petrushansky v. State,* 182 Md. 164, 32 A. 2d 696 (1943). Cf. *Schneider v. Duer,* 170 Md. 326, 184 A. 914 (1936); *Tighe v. Osborne,* 149 Md. 349, 131 A. 801 (1925). While the municipal law-making body may not delegate its power to enact ordinances, it is elementary that it may vest in its administrative officers and agencies a measure of discretionary power and authority to make rules and regulations relative to the enforcement of the law for which such officer and agency is responsible. *Leser v. Lowenstein,* 129 Md. 244, 98 A. 712 (1916); *Michigan Central R. R. v. Powers,* 201 U. S. 245 (1906); *State v. Spears,* 57 N. M. 400, 259 P. 2d 356 (1953). The owners complain that the ordinance lacks guides and standards on which to base the authorized rules and regulations. On the contrary we think the standards are sufficient and as specific as the nature of the subject matters permit. See *Herzinger v. City of Baltimore,* 203 Md. 49, 62, 96 A. 2d 3 (1953). Since the administrative officers are authorized to adopt only such regulations as they deem proper and necessary to enforce the ordinance for the protection of the health, safety, morals and general welfare of the public, it is these standards which must guide them in ascertaining the basic facts on which to predicate the regulations. If a regulation should be attacked, the courts will determine whether it exceeds the standards. In any event the officers are bound by the decisions of this Court as to what does and what does not bear a substantial relation to the public interests. Cf. *Tighe v. Osborne,* 150 Md. 452, 458, 133 A. 465 (1926), and the cases therein cited.

With respect to the alleged delegation of power to the po-

lice commissioner, who, anomalously, is an official of the State, not the City, it is clear that the ordinance does not require him to perform any duties whatsoever. See § 6, *supra*. That the police commissioner may—since he consistently does cooperate with the municipal authorities—certify his findings under subsections (a) and (b) of § 6, *supra,* does not make the ordinance illegal. In any event, even if we should determine that § 6, *supra,* in so far as it applies to the police commissioner, is invalid, the remainder of the ordinance would not thereby be affected. See § 2(b) of Chapter 15A, *supra.*

(g), (h). *Invalidity for Vagueness or Other Cause.* The owners contend that the provisions of certain parts of the ordinance—§ 2(b) [the term "operator"], § 2(e) [the term "or any combination thereof"], § 3(a)(9) [investigation of the character and qualifications of applicant for rooming house licenses], § 5 [renewal of licenses], § 6(a) [revocation of license for failure to comply with notice to correct violations of law] and § 7 [notice, hearing and appeal]—are *too* vague and indefinite (though not ambiguous as alleged in the bill) or otherwise invalid. They cite and rely on *Theatrical Corp. v. Brennan, supra, Schneider v. Duer, supra, Tighe v. Osborne* (149 Md. 349) *supra, Lanzetta v. New Jersey,* 306 U. S. 451 (1939), *Connally v. General Constr. Co.,* 269 U. S. 385 (1926), and *Morgan v. United States,* 298 U. S. 468 (1936), to support their contentions. But an examination of these cases does not support the contention of the owners that the ordinance is vague and indefinite or, with respect to § 7, *supra,* a denial of due process of law in either the substantive or procedural sense. Moreover, since the owners are not "rooming house operators" the provisions of § 3(a)(9) do not apply to them and they have no standing to attack the provisions of that section. See *Simpson v. Board of Appeals, supra.*

(j). *Absence of Provisions for Reinstatement or Reissuance after Revocation.* Because there is no provision in the ordinance for the reinstatement or reissuance of a license after revocation, the owners contend the ordinance is unreasonable and oppressive and suggest that such omission may well be

such cruel and unusual punishment as is forbidden by Article 25 of the Declaration of Rights, but they do not contend that the ordinance is invalid for any of the reasons assigned, and it is not. See 9 McQuillin, *op. cit. supra* § 26.81. It may be that the ordinance should be so amended as to permit the reinstatement or reissuance of a license in certain instances, but that is a legislative not a judicial function.

(k). *Invalidity of* § *15(b), supra.* The owners contend that the provisions of this subsection of the ordinance is an attempt to impose criminal liability without proof of knowledge or the guilt of the person in actual charge, management or control of the licensed premises and therefore denies due process of law. The incorrectness of this contention was settled in the recent case of *Haskin v. State,* 213 Md. 127, 131 A. 2d 282 (1957), wherein the constitutionality of a similar statute [Code (1951), Art. 2B, § 114 (a)] was upheld and the absent tavern owner was convicted of selling beer to minors for the reason that the owner's bartender had not used "due caution" in ascertaining the age of the minor. Cf. *Maryland Racing Comm. v. McGee,* 212 Md. 69, 128 A. 2d 419 (1957), and the cases therein cited.

We think it is clear that the ordinance does not violate Articles 23 and 15 of the Declaration of Rights or the Fourteenth Amendment for any of the reasons relied on by the owners referred to in this part [i] of this opinion.

[ii]

The title of the ordinance is not defective or deceptive and does not violate § 28 of the Charter, which, as does § 29 of Article III of the Constitution of Maryland, provides that "[e]very [o]rdinance * * * shall embrace but one subject, which shall be described in its title." The owners contend—because it regulates the licensing of rooming houses as well as multiple family dwellings with separate license fees and provisions with regard to the operation of each—that the ordinance embraces more than one subject. We do not agree. The same rules which govern the validity of the title of acts of the General Assembly also govern the validity of the title of ordinances of the City Council. See *Roland Elec. Co. v.*

*Baltimore,* 210 Md. 396, 124 A. 2d 783 (1956); Everstine, *Legislative Titles,* 9 Md. L. Rev. 197, 244 (1948). The reasons for the requirement that every law shall embrace but one subject are set forth in detail in *Davis v. State,* 7 Md. 151, 160 (1854), and need not be repeated here. We have repeatedly held that the title to legislative acts is invalid only when it plainly contravenes a provision of the constitution, and a reasonable doubt in its favor is enough to sustain it. *Atkinson v. Sapperstein,* 191 Md. 301, 60 A. 2d 737 (1948). The title of the ordinance satisfies the charter or constitutional requirement if it fairly advises the City Council and the public of the real nature and subject matter of the legislation sought to be enacted. *McGlaughlin v. Warfield,* 180 Md. 75, 23 A. 2d 12 (1941). If the several sections of the ordinance refer to and are germane to the same subject matter, which is described in the title, the ordinance is considered as embracing but a single subject, and satisfies the requirements of the city charter. *Baltimore v. Reitz,* 50 Md. 574, 579 (1879). We think it is clear the ordinance embraces only one subject matter, that is, the licensing and regulation of renting or leasing housing accommodations in the city whether it is a rooming house, multiple family dwelling, hotel, motel or whatever the accommodation may be. Whether the dwelling unit is private or public in nature is of no importance so far as the title to the ordinance is concerned. All are dwellings with similar problems such as overcrowding, sanitation, fire hazards and health considerations. And all concern the renting or leasing of dwelling units to the public. *Neuenschwander v. Wash. San. Com.,* 187 Md. 67, 48 A. 2d 593 (1946). The additional contentions that there are other variations between subject matters referred to in the title and kindred subject matters set forth in the body of the ordinance—concerning the meaning of multiple family dwellings, the non-existent "duties" conferred upon the police commissioner and certain prohibitory and criminal provisions—are likewise without merit.

The decree of the lower court will be affirmed.

*Decree affirmed, the costs to be paid
by the appellants.*