586 A.2d 816

**MAYOR AND CITY COUNCIL OF OCEAN CITY, Maryland,**

v.

**PURNELL–JARVIS, LTD.**

No. 802, Sept. Term, 1990.

Court of Special Appeals of Maryland.

March 6, 1991.

392

394

Guy R. Ayres, III (Jerome James LaCorte and Ayres, Jenkins, Gordy & Almand, P.A. on brief), Ocean City, for appellant.

Raymond S. Smethurst, Jr. (Barbara R. Trader, and Adkins, Potts & Smethurst, on brief), Salisbury, for appellee.

Argued before WILNER, C.J., ROSALYN B. BELL and J. FREDERICK SHARER (specially assigned), JJ.

ROSALYN B. BELL, Judge.

This case involves a request for a refund of fees paid by Purnell–Jarvis, Inc. (appellee, cross-appellant) to Ocean City (appellant, cross-appellee) in connection with the development of and construction on certain properties in Ocean City during 1983 and 1984. The Mayor and City Council did not respond to this request. Therefore, the request was deemed denied.

Purnell–Jarvis appealed to the Maryland Tax Court, claiming that the fees charged during this period were excessive, unreasonable and illegal. The Tax Court ruled Purnell–Jarvis was entitled to a refund for 1984, but not for

1983. The Tax Court remanded the case to the Mayor and City Council with instructions to enact reasonable fee schedules for 1984 and to refund the difference between what Purnell–Jarvis did pay and what it should have paid. The Tax Court also held that Purnell–Jarvis was entitled to six percent per annum interest from the date of payment of each fee subject to a refund.

Purnell–Jarvis appealed to the Circuit Court for Worcester County and Ocean City noted a cross-appeal. The circuit court reversed and remanded the case to the Tax Court. Ocean City appealed and Purnell–Jarvis cross-appealed. The issues on appeal are:[1]

— Whether the circuit court erred in holding that Purnell–Jarvis had standing to claim a refund of fees for building permits and zoning approvals?

— Whether the circuit court erred in holding that the validity of regulatory fee schedules is determined by the reasonableness of the revenues derived therefrom?

— Whether the circuit court erred in remanding the case to the Tax Court for a determination of whether

---

1. The City raises the following three issues:
— Whether the circuit court erred in holding that Purnell–Jarvis had standing to seek a refund of the fees paid?
— Whether the circuit court erred in remanding the case to the Tax Court to determine whether the fees produced by the 1983 and 1984 fee schedules were reasonable?
— Whether the circuit court erred in holding that the applicable interest rate on any refund is the rate provided for in Md.Code Ann. Art. 24, § 9–713?
Purnell–Jarvis raises these additional issues:
— Whether the circuit court erred in holding that the validity of the regulatory fees is determined by the reasonableness of the revenues derived from those fees?
— Whether the Tax Court erred in holding that the 1983 fee schedules were valid based upon a determination that the City's purpose in enacting the fee schedules was to correct deficits in the programs?
— Whether the 1983 and 1984 fee schedules are invalid as a matter of law?
All of these issues will be fairly addressed by answering the issues as framed below.

the revenues produced by the fee schedules for 1983 and 1984 were reasonable?

— Whether the circuit court erred in holding that the applicable interest rate is the rate provided for in Md.Code Ann. Art. 24, § 9–713? [2]

## FACTS

In 1981, the Mayor and City Council of Ocean City (City) amended the City's charter to provide for a City Manager whose responsibilities would include supervision of all department heads. In 1982, the City hired Anthony Barrett as its first City Manager. One of his first tasks as City Manager was to prepare a budget in which each department of the City government would bring in enough revenue to support the cost of running its programs. For Barrett, increasing the revenues for the Department of Planning and Community Development [3] (Department) meant making budgetary changes. He suggested imposing a site plan review fee to increase the revenues for the Planning and Zoning Divisions. He also suggested increasing the fee schedule for building permits to increase revenues for the Building Inspection Division. Revenues from those fees were to be used to support the costs of the entire division, rather than solely the costs of maintaining site plan review and building inspection programs. The City Council adopted Barrett's proposal.

As a result of the City's revised budget, the revenues for each division of the Department increased dramatically. The City's records indicate that, in fiscal year 1983, the

---

**2.** Article 24, § 9–713 provides that interest on refunds shall be at the rate set under Md.Tax–Gen.Code Ann. § 13–604(a) (1988). Section 13–604 provides that the interest on refunds is two percent above the average investment yield on State money for the previous fiscal year, as published in the Treasurer's Annual Report. Article 24, § 9–713 was derived from Art. 81, § 218 without substantive change.

**3.** The Department of Planning and Community Development is made up of three divisions: a zoning division, planning division, and a building inspection division.

income generated by the fees collected by the Planning and Zoning Divisions totalled $219,163, while expenditures totaled $122,555.[4] Thus, Purnell–Jarvis claims that revenues exceeded the actual costs of the Planning and Zoning Divisions by $96,685. Documents presented to the Tax Court show that the income generated by the fees collected by the Building Inspection Division totaled $657,361, while expenditures totaled $86,412. Thus, revenues for the Building Inspection Division exceeded costs by $570,949. Purnell–Jarvis also contends that, in fiscal year 1984, the gap between revenues and expenses for the planning and zoning division widened to $198,182, with an income of $371,911 and expenditures of $173,729. According to Purnell–Jarvis, the Building Inspection Division had a revenue/expense gap of $933,513, with an income of $1,047,086 and expenditures of $113,573. Therefore, Purnell–Jarvis claims that, for fiscal year 1983 and fiscal year 1984, the City generated a surplus of more than $1,800,000 through site plan review fee and building permit fee collections.

Purnell–Jarvis is a general contractor located in Ocean City. The company has been doing business there for approximately 25 years. It builds multi-family residential structures and commercial properties. For the most part, it builds for developers pursuant to a lump-sum contract. Occasionally, it builds on a cost-plus basis.[5]

---

**4.** The City's records indicate that expenditures in the Planning and Zoning Divisions totaled $122,555, while Purnell–Jarvis contends these expenditures totaled $122,478. It is unclear which figure the Tax Court accepted as accurate. A discrepancy of $77 on this scale, however, is negligible. There was also some dispute regarding whether certain costs outside the Planning and Zoning and Building Inspection Divisions, such as the City Manager's salary, data processing, and building and grounds maintenance, were included in calculating the expenditures for these divisions. The record is unclear on this point.

**5.** A fixed or lump-sum contract is one in which the contractor agrees to build the structure for one fixed sum regardless of the actual cost. A cost-plus contract is one in which the contractor agrees to build the structure for the cost of the materials and labor, plus an agreed percentage of those costs as profit.

On February 13, 1986, Purnell–Jarvis filed a written request with the City for a refund of all building permit and site plan review fees paid by it from July 1, 1982 to June 30, 1984, the two fiscal years in question. The Mayor and City Council did not respond to this request. Purnell–Jarvis deemed the lack of response a refusal to refund the fees.

Purnell–Jarvis then filed an appeal to the Maryland Tax Court. It contended that the charges and fees were excessive, illegal, and unreasonable because they were assessed and used by the City to raise revenue for general purposes. Purnell–Jarvis believed the revenues should have been used solely to defray the costs of administering the building and zoning codes. The City argued that the fees and charges were for regulatory purposes only. They also argued that Purnell–Jarvis is not the party entitled to a refund as it did not itself pay the fees. The Tax Court found that Purnell–Jarvis did have standing to claim a refund for the fees paid. It held, however, that Purnell–Jarvis was actually entitled to a refund only for the fees paid in 1984. The Tax Court remanded the case to the Mayor and City Council, ordering them to enact reasonable fee schedules for 1984 and to give Purnell–Jarvis a refund for fees paid in that year. The Tax Court also found that Purnell–Jarvis was entitled to payment of interest on the refund at the rate of six percent per annum from the date of payment.

Purnell–Jarvis noted an appeal to the Circuit Court for Worcester County. The City noted a cross-appeal. The circuit court held that the decision of the Tax Court was erroneously based on the subjective intent of the City Council in making the fee schedules rather than on the reasonableness of the revenues generated. The circuit court remanded the case to the Tax Court to make the determination of the validity of the fee schedules.

Purnell–Jarvis then filed a motion to alter judgment and the City filed a motion to reconsider. They both requested the circuit court to address issues not addressed in the previous opinion. At a hearing held on March 21, 1990, the City concurred in Purnell–Jarvis's suggestion that the ques-

tion of the reasonableness of the fees was a question of law which should be decided by the circuit court rather than the Tax Court.

In its April 12, 1990 opinion and order, the circuit court again remanded the adjudication of the validity of the fee schedules to the Tax Court. It found that Purnell–Jarvis had standing to claim refunds for the 13 lump-sum contracts and that Purnell–Jarvis was entitled to interest at the rate noted in Md.Code Ann. Art. 24, § 9–713.

In response, the City noted an appeal and Purnell–Jarvis noted a cross-appeal.

## SCOPE OF REVIEW

A final order of the Tax Court is subject to judicial review in accordance with §§ 10–215 and 10–216 of the Maryland Administrative Procedure Act. Md.Tax–Gen.Code Ann. § 13–532(a) (1988). Section 10–215 provides for judicial review of an agency decision in the circuit court. Md.State Gov't Code Ann. § 10–215 (1984). Section 10–216 provides for appellate review of a final judgment of the circuit court by this Court. Md.State Gov't Code Ann. § 10–216 (1984).

An agency decision may be reversed or modified if a "substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the agency;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious."

Md.State Gov't Code Ann. § 10–215(g)(3).

The court's role upon reviewing an agency decision goes very little beyond its inherent power of review to

prevent illegal, unreasonable, arbitrary or capricious administrative action. *Harford Memorial Hospital v. Health Services Cost Review Commission,* 44 Md.App. 489, 506, 410 A.2d 22 (1980). Thus, judicial review of an agency decision is limited to determining whether a reasoning mind could have reached the factual conclusions reached by the agency. *Supervisor of Assessments of Montgomery County v. Asbury Methodist Home,* 313 Md. 614, 625, 547 A.2d 190 (1988). Moreover, this substantial evidence test applies when the only question is whether the agency, using the correct legal standard, properly applied the law to the facts. *Asbury Methodist Home,* 313 Md. at 627, 547 A.2d 190. Where, however, the agency's decision is based on an erroneous conclusion of law, this deferential test does not apply. *Asbury Methodist Home,* 313 Md. 626, 547 A.2d 190. The reviewing court, therefor, may substitute its judgment for that of the agency concerning questions of law. *Asbury Methodist Home,* 313 Md. at 626, 547 A.2d 190.

### STANDING

The Tax Court held that Purnell–Jarvis had standing to seek a refund of site plan review and building permit fees. It did not differentiate between the lump-sum contracts and the cost-plus contracts. The circuit court affirmed the Tax Court in part and held that Purnell–Jarvis had standing to seek a refund of fees on 13 lump-sum contracts. Those fees were included in the contracts' "miscellaneous cost" figure which did not rise when fees rose. The circuit court also held, however, that Purnell–Jarvis did not have standing to seek a refund of fees on three cost-plus contracts. Those fees were directly billed to the developers and thus the court held that Purnell–Jarvis was a mere conduit of the developers. We agree with the Tax Court and will reverse the circuit court. We explain.

The City argues that Purnell–Jarvis does not have standing to seek a refund of any fees. The City contends that Purnell–Jarvis did not pay the fees but passed them on to the developers.

Purnell–Jarvis responds that it did not pass on the fees any more than it passed on the costs of concrete, steel or electrical wire. This, however, is exactly what any contractor does in a construction contract. Both the City's argument and Purnell–Jarvis's response miss the point.

■■■ The question of who ultimately bears the economic burden of the fees is not determinative of the standing issue. Generally, whether a party has standing to sue depends on whether that party has an actual, real and justiciable interest susceptible of protection through litigation. 1A C.J.S. *Actions* § 60(a) (1985). More specifically, the modern rule in tax refund cases is that the party who is required to pay the tax, and who pays the tax is the party entitled to claim a refund. *Latrobe Brewing Co. v. Comptroller*, 232 Md. 64, 71, 192 A.2d 101 (1963). Additionally, Md.Code Ann. Art. 24, § 9–710 (1957, 1990 Repl.Vol.), provides:

"A claim for refund may be filed with the tax collector who collects the tax, fee, charge, interest, or penalty by a claimant who:

"(1) Erroneously pays to a county or municipal corporation a greater amount of tax, fee, charge, interest, or penalty than is properly and legally payable; or

"(2) Pays to a county or municipal corporation a tax, fee, charge, interest, or penalty that is erroneously, illegally, or wrongfully assessed or collected in any manner."

■■■ *Latrobe* and Art. 24, § 9–710 are dispositive of the standing issue. Purnell–Jarvis, in fact, paid the fees which it alleges were illegally assessed. The fact that those fees may have been passed on, directly or indirectly, to the developer is immaterial. We decline to require the trier of fact to investigate the murky question of who ultimately bears the economic burden of the site plan review and

building permit fees.[6] Therefore, we hold that Purnell–Jarvis has standing to seek the refund of the fees it paid in conjunction with both lump-sum and cost-plus contracts.

## TEST OF VALIDITY

The Tax Court held that the fee schedule for 1983 was valid because the new fees were intended to correct the deficit in the site plan review and building inspection programs. The Tax Court also held, however, that the fee schedule for 1984 was not valid. Both the City and Purnell–Jarvis argue that the Tax Court applied the wrong test for determining the validity of the fee schedules. The City argues that it was error for the Tax Court to hold the 1984 fee schedule invalid when it held that the same fee schedule for 1983 was valid. Purnell–Jarvis argues that the Tax Court applied an incorrect test of validity to the 1983 fee schedule.

■ The appropriate test for determining the validity of regulatory fees is solely a question of law. Therefore, the decision of the Tax Court on this issue is not entitled to deferential treatment and this Court may substitute its judgment for that of the Tax Court. *Asbury Methodist Home*, 313 Md. at 626, 547 A.2d 190.

■ It is undisputed that the building permit and site plan approval fees are part of a comprehensive plan to regulate the development of the community. Generally, if a fee is imposed as part of a regulatory scheme, the amount of the fee must be reasonable and have some definite relation to the purpose of that scheme. *Maryland Theatrical Corp. v. Brennan*, 180 Md. 377, 381, 24 A.2d 911 (1942). Thus, "where an act is passed under the police power, the money collected under it must be not more than that neces-

---

**6.** Whether Purnell–Jarvis will ultimately be required to transmit that refund to the purchaser in the three cost-plus contracts is not before us. Nevertheless, counsel for Purnell–Jarvis admitted at oral argument that it is obligated to account to the developers on these cost-plus contracts for any money recouped.

sary to carry out its provisions." *County Comm'rs of Anne Arundel County v. English,* 182 Md. 514, 520–21, 35 A.2d 135 (1943).

—1983 Fee Schedule—

The City argues that the Tax Court properly considered whether the Mayor and City Council intended to raise revenues when they enacted the fee schedules for 1983. The City, in essence, contends that the intent of the Mayor and City Council is relevant to a determination of whether the fee schedules were reasonable. We disagree and explain.

 Whether a particular act is a regulatory measure or a revenue raising measure determines which rules of construction apply. *Brennan,* 180 Md. at 381, 24 A.2d 911. The amount of the tax is not reviewable if the act is a revenue raising measure. *Brennan,* 180 Md. at 381, 24 A.2d 911. If the act is a regulatory measure, however, the amount of revenue it produces must be reasonable and have some definite relation to the purpose of the regulation. *Brennan,* 180 Md. at 381, 24 A.2d 911. Generally, an act is a revenue raising measure when it appears from the act itself that revenue is its main objective. *Brennan,* 180 Md. at 381, 24 A.2d 911.

> "In general, ... where the fee is *imposed for the purpose of regulation,* and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper, imposed by virtue of the police power; but *where it is exacted solely for revenue purposes* and its payment gives the right to carry on the business without any further conditions, it is a tax."

*English,* 182 Md. at 520, 35 A.2d 135, quoting 33 Am.Jur. *Licenses,* ¶ 19, p. 340 (emphasis added).

 It seems clear that the purpose of the act or the intent of the persons enacting it is relevant to deciding only whether the act is a regulatory or revenue raising measure.

*See Brennan,* 180 Md. at 381–82, 24 A.2d 911; *English,* 182 Md. at 520, 35 A.2d 135; *McBriety v. Mayor of Baltimore,* 219 Md. 223, 237, 148 A.2d 408 (1959). Once that determination is made, other rules of construction are applied. *Brennan,* 180 Md. at 381, 24 A.2d 911. Thus, where an act is a regulatory measure, the sole inquiry is whether the amount of money to be collected under it is reasonable and is not more than necessary to fund the enforcement of the regulation. *English,* 182 Md. at 520–21, 35 A.2d 135; *Brennan,* 180 Md. at 381, 24 A.2d 911. Because it is clear that the fee schedules at issue were in the nature of regulatory measures, the amount of money that the Mayor and City Council intended to raise, as opposed to what those measures actually raised, is not the test to be applied in determining reasonableness. Therefore, we hold that the Tax Court erred when it considered the intent of the Mayor and City Council dispositive in determining whether the 1983 fee schedule was reasonable.

—1984 Fee Schedule—

The City next contends that, having found the 1983 fee schedule reasonable, it was error for the Tax Court to find the identical fee schedule for 1984 unreasonable. The Tax Court found that the Mayor and City Council were aware of the inordinate amount of construction and the revenue raised as a result. It also found that they were aware that the high volume of construction was continuing into 1984. The Tax Court inferred that the Mayor and City Council intended to raise revenues far in excess of any expenditures associated with the programs by adopting a fee schedule identical to the 1983 fee schedule. Therefore, the Tax Court held that the 1984 fee schedules were unreasonable.

The City argues that it is logically inconsistent to find a fee schedule in one year to be reasonable and yet find the identical fee schedule in another year unreasonable. It also argues that the Tax Court erred in failing to consider that the fee schedules for 1985 were lowered, demonstrating the

intent of the Mayor and City Council to enact reasonable fee schedules as regulatory measures.

The City's argument might have some merit if the intent of the Mayor and City Council was the test of the validity of the fee schedule. As pointed out previously, however, the actual intent of the Mayor and City Council in enacting the fee schedules is simply not relevant. Nevertheless, to the extent that the Tax Court did consider their intent to be dispositive, that Court committed an error of law in ruling on the 1984 schedule.

## REMAND

The circuit court ruled that the case should be remanded to the Tax Court for a determination of the reasonableness of the 1983 and 1984 fee schedules. Both the City and Purnell–Jarvis argue that the circuit court erred in remanding the case. They also argue that this Court should determine the reasonableness or unreasonableness of the fee schedules as a matter of law. We disagree and explain.

Purnell–Jarvis argues that, once the amount of money collected from the fees and expenditures are established, the courts have treated the reasonableness of fee schedules as a matter of law. For this proposition, it cites *McBriety v. Baltimore City*, 219 Md. 223, 148 A.2d 408 (1959). The Court of Appeals stated "the chancellor found as a fact that the estimated expenses over a five-year period would average several thousand dollars more than the average annual income from fees during the same period, and we are unable to say he was clearly wrong." *McBriety*, 219 Md. at 236–37, 148 A.2d 408. The Court went on to affirm the chancellor's ruling that the license fee was valid. *McBriety*, 219 Md. at 241, 148 A.2d 408. Purnell–Jarvis apparently interprets this affirmance as a holding that the fee schedule was valid as a matter of law.

Moreover, Purnell–Jarvis argues that, when there is not a dispute of fact, an appellate court in reversing the judgment of the trial court may take such action as the trial court

should have taken without remanding the case for further proceedings. *Sothoron v. West,* 180 Md. 539, 544, 26 A.2d 16 (1942). Purnell–Jarvis contends that, since there is no dispute of fact in the case, we should decide the validity of the fee schedules and enter judgment for it.

Assuming that this Court could decide the validity of the fee schedules as a matter of law once the amount of money collected and expended under the regulations had been established, Purnell–Jarvis's argument has a fatal flaw. The Tax Court made no specific findings of fact regarding the amount of money collected and expended under the regulations at issue here. Additionally, while some of the figures in the parties' exhibits do agree with each other, some of the figures do not. The parties also dispute what expenditures may be compared to the fees collected.

We cannot say that the amount of money collected and expended under the regulations has been established. This Court will not engage in fact finding. The Tax Court is the appropriate tribunal to determine these facts and ultimately whether the fees were reasonable.

### —Relevant Considerations on Remand—

The City and Purnell–Jarvis each raise questions that were not specifically addressed by the Tax Court. In order to provide guidance to the Tax Court on remand, we will address these questions.

 The City argues that, in determining whether the fee schedules were reasonable, the Tax Court may consider the amount of money generated by the fees and the costs expended over a period of time prior to the enactment of the 1983 and 1984 fee schedules. The City suggests that, if the Planning and Zoning Divisions' and Building Inspection Division's deficits for several years prior to 1983 and 1984 are averaged in, the fee schedules for 1983 and 1984 are reasonable. It relies on *McBriety,* 219 Md. 223, 148 A.2d 408, for this proposition. We find such reliance misplaced.

■ In *McBriety*, the Court of Appeals held that, when averaged over a prospective five-year period, the licensing fees bore a reasonable relation to the expense of licensing and to the inspection services to be rendered under the ordinance. *McBriety*, 219 Md. at 236, 148 A.2d 408. While *McBriety* does recognize that the court may average the income from the fees or the expenses of the program, it does not go as far as the City contends. It is reasonable for a municipality to estimate prospectively the income from and expenses of a newly created regulatory program. Such estimates are part of good government planning. Requiring the fees to pay for retroactive costs, however, is tantamount to requiring today's applicants for permits to pay for yesterday's users of the service. Such a system would be fundamentally unfair.

■ Moreover, the requirement that the amount of the fees collected must be reasonable and not more than necessary to carry out the regulation does not contemplate a retroactive comparison of fees and expenditures. This requirement is prospective in nature. It requires that the fees imposed at any one point in time are reasonable in comparison to the expenditures at that same point in time. The requirement does not allow a county or municipality to recoup losses incurred through many years of mismanagement, although certainly historical data may be used in making estimates of future income and expenses.

Furthermore, allowing a county or municipality to average retroactively the money collected and expended presents a practical problem. Do we allow a court to look back five years, or 10 years, or 20 years? At what point does the court draw the line? Therefore, we hold that it is inappropriate for the Tax Court to consider, for purposes of averaging, the amount generated by the fee schedules and the expenditures made prior to the enactment of the 1983 and 1984 fee schedules.

■ Purnell–Jarvis argues that the Tax Court may only compare the income generated by the building permit and

site plan approval fees to the expenditures that are attributable solely to the issuance of building permits and site plan approvals. While we agree that the Tax Court should not consider expenditures that are irrelevant to those programs, we think Purnell–Jarvis's position is too restrictive. That position is likely to exclude expenses that are legitimately necessary to the enforcement of building, inspection and site plan approval regulations. We hold that the Tax Court may consider all expenditures that are directly relevant to the administration of those regulations. For example, if the site plan approval regulations include the right to appeal to a site plan review committee, the salaries of the committee should be considered in calculating expenditures. On the other hand, if the City Council were suddenly to declare the police department to be part of the Building Inspection Division, the salaries and equipment of the police force could not be considered in calculating expenditures.

 Additionally, it is clear that the actual difference between the income derived from the fees and the money expended in enforcing the regulations is important. The projections of income and expenditures made by the City Manager and the City Council are also important.

Purnell–Jarvis had sought to subpoena members of the City Council to testify regarding the purpose of and basis for the new fee schedules. The Tax Court granted the City's motion to quash those subpoenas. While any testimony regarding the purpose of increasing the fees is not relevant, testimony regarding the basis for the new fee schedules is relevant.

We recognize that anyone who administers a municipality must plan in advance. Such planning necessarily includes making projections or estimates of government expenditures and income. Such projections may have been used when the fee schedules in this case were changed. Because the testimony of the members of the City Council was kept out, we do not know on what projections they relied. If the City Council made good faith efforts to project or estimate

the costs of regulation and the amount of income to be expected from the fees, these projections or estimates should be taken into consideration.

Purnell–Jarvis complains that any projections or estimates made by the City Manager are unscientific. We note that when the City Manager was hired he had very little time and poor technical support in drawing up a budget. The methods of the City Manager or the City Council in projecting expenditures and income may have been less than ideal. Any bona fide efforts to project such expenditures and income should be considered, however. In other words, the Tax Court should consider whether the City Council's own projected income from fees was reasonable in comparison to the projected expenditures. We understand that in retrospect the Council revised some of those projections. Those changed allocations should also be considered, along with the reasons for their revision.

The City also complains that, if the 1983 and 1984 fee schedules are declared invalid, there will be a flood of litigation retroactively challenging fee schedules. We find this argument spurious. A fee schedule will be declared invalid only where the revenue generated by it is excessive and bears no definite relation to the purpose of the regulatory scheme.

## APPLICABLE INTEREST RATE

The applicable interest rate on tax refunds at the time Purnell–Jarvis filed its refund claim was six percent. Md. Code Ann. Art. 81, § 218 (1957, 1980 Repl.Vol.). This interest rate, however, was changed by Chapter 736, § 1 of the 1987 Laws of Maryland. The change was codified as Md.Code Ann. Art. 81, § 218 (1957, 1980 Repl.Vol., 1987 Cum.Supp.). The new interest rate took effect on July 1, 1987, before the hearing in the Tax Court and prior to any refund being allowed or ordered. Article 81, § 218 provides in pertinent part:

"All claims for the refund of special taxes, fees, charges, penalties or interest which may be allowed under the provisions of this subtitle shall, if no appeal is pending, be paid by the State, county or municipal agency authorized to collect the same out of any funds in the hands of such agency. Interest at the rate determined under § 204 of this article shall be paid on such amounts refunded accounting from the date the taxes, fees, charges, penalties or interest so refunded were paid, but interest shall not be paid on tax refunds now pending or subsequently filed where the tax originally paid was paid in whole or in part by reason of a mistake or error on the part of the taxpayer and not attributable to the State, county or municipal taxing authority."

Article 81, § 204 provides that the interest rate on refunds is two percentage points above the average investment yield on State funds for the State's previous fiscal year.[7]

The Tax Court held that six percent was the applicable interest rate on any refund allowed in this case. The circuit court reversed and held that the interest rate effective July 1, 1987 applied.

The City argues that the applicable interest rate in this case is six percent. Purnell–Jarvis argues that the applicable interest rate is the rate that became effective July 1, 1987. Both arguments center on whether the new interest rate should be applied prospectively or retrospectively. We agree that the interest rate effective July 1, 1987 should be applied prospectively. That does not mean, however, that the six percent interest rate applies exclusively in this case. We shall hold that the six percent interest rate applies to any refund due from the period of time that the fees were paid until the effective date of the new interest rate, July 1, 1987. The new interest rate applies to any refund from

---

7. As noted previously, Art. 81, § 218 was recodified as Art. 24, § 9–713 (1957, 1990 Repl.Vol.). While the statute is worded differently, the interest rate on refunds remained unchanged and does not affect this case.

July 1, 1987 until such time as the refund is paid. We explain.

Whether a statute should be applied retroactively is a matter of statutory construction. *See State Comm'n on Human Relations v. Amecom Div. of Litton Systems, Inc.*, 278 Md. 120, 123–24, 360 A.2d 1 (1976). The proper interpretation of a statute is solely a question of law. *Asbury Methodist Home*, 313 Md. at 626, 547 A.2d 190. As a question of law, we may substitute our judgment for the Tax Court's holding on the applicable interest rate on refunds.

The cardinal rule of statutory construction is that the court should ascertain the intent of the Legislature. *Unsatisfied Claim & Judgment Fund Board v. Bowman*, 249 Md. 705, 708, 241 A.2d 714 (1968). The Legislature is presumed to have intended that the statute operates prospectively. *Amecom*, 278 Md. at 123–24, 360 A.2d 1. Therefore, a statute is ordinarily given prospective application unless the intent of the Legislature is to the contrary. *Zebron v. American Oil Co.*, 10 Md.App. 308, 310, 270 A.2d 339 (1970).

In the instant case, the statute contains no clear expression that it operate retroactively. Additionally, the legislative history of the statute does not indicate that the statute should be applied retroactively. Therefore, we hold that the interest rate that became effective July 1, 1987 must be applied prospectively. That, however, does not end our analysis.

The purpose of providing interest on tax refunds, like the purpose of prejudgment or postjudgment interest, is to "compensate the aggrieved party for the loss of the use of the principal liquidated sum[8] found due it and the loss of income from such funds." *Mayor of Baltimore*

---

8. A tax refund is a liquidated sum. It is a sum which is "[a]scertained; determined; fixed; settled; made clear or manifest." *Black's Law Dictionary* 838 (5th ed. 1979).

*v. Kelso Corp.*, 294 Md. 267, 272, 449 A.2d 406 (1982), quoting *I.W. Berman Properties v. Porter Brothers, Inc.*, 276 Md. 1, 24, 344 A.2d 65 (1975) (footnote added). The rate of interest on tax refunds provided by statute represents a legislative determination of what constitutes fair compensation. *See Kelso*, 294 Md. at 273, 449 A.2d 406. A change in that interest rate represents a legislative recognition that the old rate no longer fairly compensates the taxpayer. *See Kelso*, 294 Md. at 273, 449 A.2d 406.

▮▮▮ Applying the new interest rate only to those cases in which refund claims were filed after the effective date of the statute fails to accomplish the purpose of fairly compensating the taxpayer for the loss of the use of his or her money. If we were to adopt the City's position, a taxpayer, who on June 30, 1987 filed a claim for a refund of taxes paid in 1986, would be entitled to interest at the rate of six percent. On the other hand, a taxpayer, who on July 2, 1987 filed a claim for a refund of taxes paid in 1986, would be entitled to interest at the new rate. We think such a result is absurd.

This issue in the instant case is analogous to the issue presented to the Court of Appeals in *Kelso*. In *Kelso*, the rate of postjudgment interest changed effective July 1, 1980 from six percent to 10 percent. *Kelso*, 294 Md. at 268 n. 2, 449 A.2d 406. A judgment was given to Kelso in a condemnation proceeding in September of 1979. *Kelso*, 294 Md. at 269, 449 A.2d 406. The City of Baltimore argued that the new interest rate applied only to judgments entered after July 1, 1980. *Kelso*, 294 Md. at 273, 449 A.2d 406.

The Court of Appeals reasoned that, if the new rate applied only to those judgments entered after July 1, 1980, those whose judgments were entered before that date would not receive the compensation that the Legislature had deemed fair. *Kelso*, 294 Md. at 274, 449 A.2d 406. The Court of Appeals further reasoned that "[j]ust as the judgment creditor has no right to interest except that which the legislature decrees, the judgment debtor has no right to a

limitation of the interest rate to be applied in the future, except that which is decreed by the legislature." *Kelso*, 294 Md. at 275, 449 A.2d 406. Recognizing that statutes are ordinarily applied prospectively, the Court held that the old interest rate of six percent would apply from the date of the judgment until July 1, 1980. The new rate would apply after July 1, 1980 until the judgment is paid. *Kelso*, 294 Md. at 276, 449 A.2d 406.

We find *Kelso* persuasive. On the one hand, applying the new interest rate in this case to the entire time period in which interest would accrue would require a retroactive application of the statute. As noted previously, the Legislature did not indicate that the statute should be applied retroactively and so the statute requires a prospective application. On the other hand, applying the old interest rate to the entire time period in which interest would accrue would deprive Purnell–Jarvis of the compensation that the Legislature has deemed fair. Therefore, we hold that interest on any refund allowed in this case will be paid at the old rate of six percent from the date the taxes were paid until July 1, 1987. After that date, interest will accrue at the new variable rate.

## CONCLUSION

We hold that Purnell–Jarvis has standing to seek the refund of the fees it paid in conjunction with both lump-sum and cost-plus contracts. We also hold that the Tax Court erred in considering the intent of the Mayor and City Council in determining the validity of the fee schedules. The correct test is whether the amount of money collected under the fee schedules is reasonable and not more than is necessary to issue building permits and site plan approvals. Furthermore, we hold that the circuit court was correct in remanding this case to the Tax Court for a determination of the reasonableness of the 1983 and 1984 fee schedules. Finally, we hold that interest will accrue at the rate of six percent from the date the taxes were paid until July 1, 1987

and thereafter at the new variable rate provided by Art. 81, § 218.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.

CASE REMANDED TO THE CIRCUIT COURT FOR WORCESTER COUNTY WITH INSTRUCTIONS TO REMAND TO THE MARYLAND TAX COURT FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

COSTS TO BE PAID THREE–FOURTHS BY OCEAN CITY AND ONE–FOURTH BY PURNELL–JARVIS.